Alice M. WOOD and Daniel
L. Wood, Petitioners,

v.

HSBC BANK USA, N.A. and Ocwen
Loan Servicing, L.L.C.,
Respondents

NO. 14–0714

Supreme Court of Texas.

Argued December 8, 2015

OPINION DELIVERED: May 20, 2016

Anh Thu Ngoc Dinh, Robert Chamless Lane, Robert Y. Petersen, The Lane Law Firm, P.L.L.C, Constance H. Pfeiffer, Russell S. Post, Beck Redden LLP, Houston, TX, for Petitioners.

Daron L. Janis, Robert T. Mowrey, William Scott Hastings, Locke Lord LLP, Dallas, TX, Joshua Tropper, Baker Donelson Bearman Caldwell & Berkowitz, P.C., Atlanta, GA, Kari Lynn Robinson, Valerie

Anne Henderson, Baker Donelson Bearman Caldwell & Berkowitz, P.C., Houston, TX, for Respondents.

William F. "Bill" Ikard, Ikard Wynne LLP, Austin TX, for amicus curiae Wendy Richardson.

J. Patrick Sutton, The Law Office of J. Patrick Sutton PLLC, Austin TX amicus curiae.

Robert W. Doggett, Texas RioGrande Legal Aid, Inc., Austin TX, for amicus curiae Texas Family Council Project.

JUSTICE LEHRMANN delivered the opinion of the Court, in which JUSTICE JOHNSON, JUSTICE GUZMAN, JUSTICE BOYD, JUSTICE DEVINE, and JUSTICE BROWN joined.

"No ... lien on the homestead shall ever be valid unless it secures a debt described by this section[.]" TEX. CONST. art. XVI, § 50(c). This language is clear, unequivocal, and binding. The primary issue in this case is whether a statute of limitations applies to an action to quiet title where a lien securing a home-equity loan does not comply with constitutional parameters. The parties also dispute whether petitioners are entitled to a declaration that respondents have forfeited all principal and interest on the underlying loan. We conclude that liens securing constitutionally noncompliant home-equity loans are invalid until cured and thus not subject to any statute of limitations. We further hold that, in light of this Court's decision today in *Garofolo v. Ocwen Loan Servicing*, 497 S.W.3d 474, 2016 WL 2986237 (Tex.2016), petitioners have not brought a cognizable claim for forfeiture. As such, we reverse the court of appeals' judgment in part and remand to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

On July 2, 2004, Alice and Daniel Wood obtained a $76,000 home-equity loan secured by their homestead. Nearly eight years later, the Woods notified the current note holder (HSBC Bank USA, N.A.) and loan servicer (Ocwen Loan Servicing, L.L.C.) that the home-equity loan did not comply with the Texas Constitution in several respects, including that the closing fees exceeded 3% of the loan amount. Neither HSBC nor Ocwen (the Lenders) attempted to cure the alleged defects. On July 9, 2012, the Woods sued the Lenders, seeking to quiet title and asserting claims for constitutional violations, breach of contract, fraud, and a declaratory judgment that the lien securing the home-equity loan is void, that all principal and interest paid must be forfeited, and that the Woods have no further obligation to pay.

The Woods moved for summary judgment, arguing that the lien is void because the evidence shows as a matter of law that the closing fees exceeded 3% and the Lenders did not cure after proper notice. The Lenders also moved for summary judgment on traditional and no-evidence grounds, asserting in pertinent part that the lien is voidable, not void, and that the statute of limitations barred all claims. The trial court granted summary judgment for the Lenders on all claims and denied the Woods' motion. The only issue the Woods raised on appeal was whether their claims based on constitutional noncompliance, including their claims to quiet title and for a declaration of forfeiture, are subject to a statute of limitations.[1] The court of appeals affirmed, holding that

---

1. The Woods did not challenge the summary judgment on their fraud and breach-of-contract claims, and it appears that the only constitutional violation they continued to raise on appeal was that the closing fees exceeded 3% of the loan value.

liens securing constitutionally noncompliant home-equity loans are voidable and that the residual four-year statute of limitations applied to the Woods' claims, accruing from the date of closing. 439 S.W.3d 585, 597 (Tex.App.—Houston [14th Dist.] 2014). We granted the Woods' petition for review.

## II.  APPLICABLE LAW

### A.  Interpretation Principles

■■■■ When interpreting our state Constitution, we rely heavily on its literal text and must give effect to its plain language. *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex.2000). "We strive to give constitutional provisions the effect their makers and adopters intended." *Id.* We construe constitutional provisions and amendments that relate to the same subject matter together and consider those amendments and provisions in light of each other. *Purcell v. Lindsey,* 158 Tex. 541, 314 S.W.2d 283, 284 (1958). And we strive to "avoid a construction that renders any provision meaningless or inoperative." *Stringer,* 23 S.W.3d at 355.

### B.  Section 50

Article XVI, section 50 of the Texas Constitution has long protected the homestead, strictly limiting the types of loans that may be secured by a homestead lien. Historically, constitutionally noncompliant homestead liens were absolutely void. *See, e.g., Tex. Land & Loan Co. v. Blalock,* 76 Tex. 85, 13 S.W. 12, 13 (1890) (holding that borrowers' misrepresentation of homestead status of land securing debt did not "enable parties to evade the law, and incumber [sic] homesteads with liens forbidden by the constitution"); *Inge v. Cain,* 65 Tex. 75, 79 (1885); *see also LaSalle Bank Nat'l Ass'n v. White,* 246 S.W.3d 616, 620 (Tex.2007) (acknowledging invalidation of noncompliant lien, but recogniz-

ing right to equitable subrogation). What the Constitution forbids cannot be evaded even by agreement of the parties, *Tex. Land & Loan Co.,* 13 S.W. at 13, and what is "never valid is always void," *Inge,* 65 Tex. at 80; *see also Laster v. First Huntsville Props. Co.,* 826 S.W.2d 125, 130 (Tex. 1991) ("A mortgage or lien that is void because it was illegally levied against homestead property can never have any effect, even after the property is no longer impressed with the homestead character.").

In 1997, the Constitution was amended to permit homestead liens to secure home-equity loans, but, consistent with Texas's long tradition of protecting the homestead, the amendments clearly prescribed very specific and extensive limitations on those encumbrances. TEX. CONST. art. XVI, § 50(a)(6)(A)–(Q). Section 50 allows such loans to be secured by the homestead only if, among other things, they are made on the condition that forfeiture of all principal and interest is available if the loan is constitutionally noncompliant and the lender fails to cure within 60 days of being given notice by the borrower. *Id.* § 50(a)(6)(Q)(x). The Constitution provides simple methods for curing specific defects, including refunding any overcharges, and a catch-all cure for defects that are irremediable by the other methods. *Id.* § 50(a)(6)(Q)(x)(a)-(f).

Section 50 states in pertinent part:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

  . . . .

  (6) an extension of credit that:

  . . . .

   (E) does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any

person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit; [and]

. . . .

(Q) is made on the condition that:

. . . .

(x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by:

(a) paying to the owner an amount equal to any overcharge paid by the owner under or related to the extension of credit if the owner has paid an amount that exceeds an amount stated in the applicable Paragraph (E), (G), or (O) of this subdivision[.]

(c) No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section. . . .

TEX. CONST. art. XVI, § 50(a)(6)(E), (Q)(x)(a), (c).

Our opinion today in *Garofolo* clarifies the extent of the protections outlined in section 50(a), including a borrower's access to the forfeiture remedy. Specifically, we hold in *Garofolo* that section 50(a) does not create substantive rights beyond a defense to foreclosure of a home-equity lien securing a constitutionally noncompliant loan, observing that the terms and conditions in section 50(a)(6) "are not constitutional rights and obligations unto themselves." 497 S.W.3d at 478. We also clarify that "the forfeiture remedy [is not] a constitutional remedy unto itself. Rather, it is just one of the terms and conditions a home-equity loan must include to be foreclosure-eligible." *Id.* at 479. We explain that borrowers may access the forfeiture remedy through a breach-of-contract action based on the inclusion of those terms in their loan documents, as the Constitution requires to make the home-equity lien foreclosure-eligible. *Id.* at 476. In *Garofolo* we interpret only section 50(a), which sets the terms home-equity loans must include in order to be foreclosure-eligible. *Id.* at 478. Section 50(c), on the other hand, expressly addresses the validity of any homestead lien, broadly declaring the lien invalid if the underlying loan does not comply with section 50. TEX. CONST. art. XVI, § 50(c).

We have also previously analyzed the interaction between section 50(a)(6)(Q)(x)'s cure provisions for constitutionally noncompliant home-equity loans and section 50(c)'s proclamation that no lien "shall ever be valid unless it secures a debt described by [section 50]." In *Doody v. Ameriquest Mortgage Co.*, we answered certified questions from the United States Court of Appeals for the Fifth Circuit arising from a dispute between a borrower and a lender over the validity of a home-equity lien. 49 S.W.3d 342, 343 (Tex.2001). As the Woods allege in this case, the borrower in *Doody* had initially been charged fees totaling more than 3% of the loan's value in violation of section 50(a)(6)(E). *Id.* The lender realized that the fees exceeded the constitutional limit and refunded the overcharge shortly after the loan closed. *Id.* The borrower argued that the lien was invalid under section 50(c),

despite the lender's cure, because the loan did not comply with section 50(a)(6) at origination. *Id.* at 345. We disagreed, holding that "a homestead lien that may not have complied with constitutional requirements at the outset can be made valid at a later date if the power to do so exists under our constitution or statutes." *Id.* at 346 (citing *Collier v. Valley Bldg. & Loan Ass'n,* 62 S.W.2d 82, 84 (Tex. Comm'n App.1933, holding approved)). We further held that complying with a cure provision "validate[s] a lien securing a section 50(a)(6) extension of credit." *Id.* Therefore, "[u]pon the cure, the lender has established the terms and conditions the lender must satisfy to make a lien valid under section 50(c)." *Id.* at 347.

### III. ANALYSIS

#### A. The Parties' Contentions

The Woods argue that a home-equity lien securing a constitutionally noncompliant loan is invalid until the defect is cured. The Woods specifically brought a quiet-title action, seeking a declaration that under section 50(c) the lien securing their home-equity loan is not valid. If a lender chooses not to cure after notice, the Woods further contend, the defect is no longer curable, and the lien becomes absolutely void. The Woods assert that no statute of limitations applies to actions seeking to declare the status of an already-invalid lien. The Lenders respond that a lien securing an uncured home-equity loan is voidable, not absolutely void, because only voidable liens can be validated, and thus the four-year residual statute of limitations should apply. *See* Tex. Civ. Prac. & Rem. Code § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."). Because the Woods did not

challenge the validity of the lien within four years of the loan closing, the Lenders therefore argue, the lien is valid. Both sides contend that our decision in *Doody* supports their position.

The Woods also argue that they are entitled to a declaration that the Lenders have forfeited all principal and interest on the note by failing to cure within 60 days of the Woods' notice, as required by section 50(a)(6)(Q)(x). The Lenders counter that the Woods did not appeal the trial court's denial of declaratory relief, so the issue is not properly before us.

#### B. Does a statute of limitations apply to the quiet-title action?

■ We agree with the Woods that a lien securing a constitutionally noncompliant home-equity loan is not valid before the defect is cured. We therefore conclude that no statute of limitations applies to an action to quiet title on an invalid home-equity lien.

■ Under the common law, a "void" act "is one which is entirely null, not binding on either party, and not susceptible of ratification." *Cummings v. Powell,* 8 Tex. 80, 85 (1852). In comparison, "a voidable act is one which is obligatory upon others until disaffirmed by the party with whom it originated and which may be subsequently ratified or confirmed." *Id.* When an instrument is void, a quiet-title action can be brought at any time to set it aside. *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 674 (1942). However, when an instrument is voidable, a four-year statute of limitations applies to actions to cancel it. *Id.* "When a deed is merely voidable, equity will not intervene as the claimant has an adequate legal remedy." *Ford v. Exxon Mobil Chem. Co.,* 235 S.W.3d 615, 618 (Tex.2007). The Woods argue that a lien securing a constitutional-

ly noncompliant home-equity loan must be considered void until it is cured and is not subject to a statute of limitations. · ·

Courts faced with this issue have typically confined their analysis to the common-law concept of void-versus-voidable liens. As the dissent notes, these courts have generally concluded that because *Doody* held that an invalid lien could later be made valid, the lien could never have been absolutely void and thus must be voidable. *See, e.g., Priester v. JP Morgan Chase Bank*, 708 F.3d 667, 674 (5th Cir. 2013) (resolving a district court split and holding that the four-year limitations period applies to suits seeking to invalidate constitutionally defective homestead liens).[2] Notably, this line of cases stems from the Dallas Court of Appeals' decision in *Rivera v. Countrywide Home Loans*, a case in which the *pro se* homeowners agreed with the lenders that a four-year statute of limitations applied to their claims. 262 S.W.3d 834, 839 (Tex.App.— Dallas 2008, no pet.). The only issue presented and decided in *Rivera* was when the owners' constitutional claims accrued. Yet courts have continued to follow *Rivera*'s holding on accrual without analyzing whether applying a statute of limitations was appropriate in the first instance. *See, e.g., Schanzle v. JPMC Specialty Mortg. LLC*, No. 03–09–00639–CV, 2011 WL 832170, at *4 (Tex.App.—Austin Mar. 11, 2011) (mem.op.) (citing *Rivera* for the

proposition that "[a] four-year statute of limitations has been applied to violations of the constitutional requirements for home equity loans, calculated from the date of closing on the loan").

A plain reading of the Constitution necessitates a finding that liens securing noncompliant home-equity loans are not valid before the defect is cured. Holding otherwise would contravene section 50(c)'s plain language. Section 50(c) dictates that no lien on a homestead "shall ever be valid" unless it secures a debt that meets section 50(a)(6)'s requirements. In *Doody*, we reconciled this strict rule with section 50(a)(6)'s cure provisions by holding that such a lien is made valid by the lender's compliance with a cure provision. *Doody*, 49 S.W.3d at 345–46. Here, the Lenders chose not to cure after being given notice, but the starting point is the same: the lien is not valid until the defect in the underlying noncompliant loan is cured. The Lenders assert that section 50(a)(6) creates an exception to section 50(c)'s strict language governing lien validity. But the Lenders' interpretation of section 50(a)(6) would essentially require us to ignore section 50(c), and we must read these provisions together instead of completely reading section 50(c) out of the analysis.

█ In any event, the text of the Constitution and our decision in *Doody* do not support a holding that liens securing constitutionally noncompliant home-equity

---

**2.** *See also In re Estate of Hardesty*, 449 S.W.3d 895, 909–12 (Tex.App.—Texarkana 2014, no pet.) (following *Priester* ); *Santiago v. Novastar Mortg., Inc.*, 443 S.W.3d 462, 470–73 (Tex. App.—Dallas 2014, pet. denied) (same); *cf. Rivera v. Countrywide Home Loans*, 262 S.W.3d 834, 839 (Tex.App.—Dallas 2008, no pet.) (parties agreed four-year statute of limitations applied to constitutional claims but disagreed on accrual date); *cf. also Schanzle v. JPMC Specialty Mortg. LLC*, No. 03–09–00639–CV, 2011 WL 832170, at *4 (Tex. App.—Austin Mar. 11, 2011, no pet.) (mem.

op.) (citing *Rivera*). *But see Santos v. Citi-Mortgage, Inc.*, No. 3:11–CV–2592–M–BK, 2012 WL 1065464, at *1 (N.D.Tex. Mar. 29, 2012) (overruled by *Priester*) (holding that limitations was inapplicable to void lien but applicable to claim for forfeiture of principal and interest due four years before suit was filed); *Smith v. JPMorgan Chase Bank, Nat'l Ass'n*, 825 F.Supp.2d 859, 861 (S.D.Tex.2011) (overruled by *Priester*) (holding that an uncured constitutional defect was not time barred because "[a] noncompliant mortgage lien against a homestead is [ ] void ab initio").

loans are merely voidable. A voidable lien is presumed valid unless later invalidated, *see Slaughter*, 162 S.W.2d at 674, while section 50 and *Doody* contemplate precisely the opposite: that noncompliant liens are invalid until made valid, *see* TEX. CONST. art. XVI, § 50(c) ("No mortgage, trust deed, or other lien on the homestead **shall ever be valid** unless it secures a debt described by this section[.]" (emphasis added)); *Doody*, 49 S.W.3d at 346 (holding that compliance with a cure provision "validates" the lien). Holding otherwise would essentially permit lenders to ignore the Constitution and foreclose on the homesteads of unwitting borrowers who do not realize that their home-equity loans violate the Constitution.

■ The Lenders assert that the onus on borrowers to notify lenders of constitutional noncompliance evinces an understanding that noncompliant liens are valid unless and until they are invalidated. This position ignores the plain language of section 50(c), reads too much into the constitutional text allowing lenders to cure, and conflicts with the great weight of historical precedent protecting homesteads. We fail to glean from the language of the cure provisions any indication that the Legislature or the voters who approved the addition of home-equity loans to the constitutional homestead provisions intended that liens securing constitutionally noncompliant loans would be validated merely by the passage of time. We note that such a warning is not included in the notice of rights that borrowers must receive before a loan closes. *See* TEX. CONST. art. XVI, § 50(g). Further, lenders are permitted, and indeed should be encouraged, to cure constitutional noncompliance on their own, without notice from the borrower, as the lender did in *Doody*.

■ Constitutional mandates need not be shoehorned into common-law concepts when those concepts conflict with the Constitution's plain text. *Cf. Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex.2007) ("Of course, statutes can modify common law rules[.]"). Section 50(c) starts with the premise that a lien securing a noncompliant loan is never valid. Implementing a section 50(a)(6)(Q)(x) cure provision brings the loan into constitutional compliance, thereby validating the accompanying lien. *See Doody*, 49 S.W.3d at 345. These cure provisions are the sole mechanism to bring a loan into constitutional compliance. Further, while a lender has 60 days to cure after notice, the borrower has no corresponding deadline by which it must request cure. TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). A lien that was invalid from origination remains invalid until it is cured. In so holding, we do not create a new common-law category of liens that are "void until cured." We are merely interpreting the plain language of the Constitution, which defies common-law categorization.

■ This reading is also consistent with section 50(i)'s protection of bona-fide purchasers. *Id.* § 50(i) ("A purchaser for value without actual knowledge may conclusively presume that a lien securing an extension of credit described by Subsection (a)(6) of this section was a valid lien securing the extension of credit with homestead property if [certain conditions are met]."). Typically, a void deed in the chain of title would foreclose the bona-fide purchaser defense. *See, e.g., Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex.App.—Fort Worth 1992, writ denied) ("A void instrument passes no title, and the mere fact that the grantee–mortgagee is an innocent purchaser makes no difference."); *Wall v. Lubbock*, 52 Tex.Civ.App. 405, 118 S.W. 886, 888 (1909, writ ref'd) ("One holding under

a void title cannot claim protection as an innocent purchaser."); *Henderson v. Lindley*, 75 Tex. 185, 12 S.W. 979, 980 (1889) (noting that a purchaser "could not be an innocent purchaser under a void sale"). However, section 50(i) provides such protection to home-equity foreclosure purchasers without actual knowledge of a constitutional defect. This deviation from the common-law treatment of void liens evinces an understanding that home-equity liens securing constitutionally noncompliant loans do not neatly fit into a common-law category. By including a bona-fide purchaser provision, section 50(i) effectively sets its own cut-off. Once a third-party buys without actual knowledge of the invalid lien, that transaction will not be undone notwithstanding the invalid lien.

Because we hold that home-equity liens securing constitutionally noncompliant loans are invalid before the defect is cured, we also hold that no statute of limitations applies to cut off a homeowner's right to quiet title to real property encumbered by an invalid lien under section 50(c). "We have held that as long as an injury clouding the title remains, so too does an equitable action to remove the cloud; therefore, a suit to remove the cloud is not time-barred." *Ditta v. Conte*, 298 S.W.3d 187, 192 (Tex.2009). Indeed, it would make little sense to cut off a homeowner's claim merely because of the passage of time when the constitutional protections do not contemplate such a limitation. The Constitution's plain text compels that homeowners' right to seek a declaration of an invalid lien not be bound by a statute of limitations. As such, no statute of limitations applies to this type of quiet-title action.

The Lenders complain that they will face a great burden by being forced to defend against constitutional noncompliance claims more than four years after closing. The dissent also raises this issue. *Post* at 555. We are unconvinced by these concerns. Lenders face no great burden to cure, even though it may require them to maintain thorough records on the loans they hold throughout the life of those loans. The State of Texas was reluctant to permit lenders to tap into the enormous value of Texans' homestead equity, as evidenced by the fact that Texas was the last state to allow it and by the elaborate consumer-protection measures in section 50. *See* TEX. CONST. art. XVI, § 50(a)(6). Section 50's intent is to protect Texas homeowners and the Texas economy by ensuring a stable lending market. *See, e.g., Sims v. Carrington Mortg. Servs., L.L.C.*, 440 S.W.3d 10, 13 (Tex.2014) (noting "Texas' strong, historic protection of the homestead"); *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 571 (Tex.2013) (noting that the home-equity amendment was controversial due to "age-old concerns that lenders would be unfair and borrowers unwise, eroding the protection the homestead is intended to afford"). This purpose is consistent with discouraging improvident lending by originating lenders and encouraging appropriate due diligence by lenders buying those loans in the secondary market.

The Constitution states that "[n]o ... lien on the homestead shall ever be valid unless it secures a debt described by this section." TEX. CONST. art. XVI, § 50(c). If the Woods' allegation that they were charged closing fees exceeding 3% of the loan's value is accurate, the lien on their homestead does not "secure a debt described by this section." *See id.* § 50(a)(6)(E). As such, the lien may not be valid. The fact that the loan could have been cured is not relevant to determining the current validity of the lien under section 50(c) because the loan was not in fact cured. The distinction between void and voidable instruments does not alter this

analysis. And it certainly should not serve as a means to cut off a property owner's unequivocal constitutional rights under section 50(c) simply because a statute of limitations applies to voidable instruments. Further, a borrower's right to quiet title under section 50(c) is not restricted by our holding in *Garofolo* that borrowers must litigate noncompliance with section 50(a)(6)(x)'s cure provisions within the context of their loan agreement.

Because we hold that no statute of limitations applies to the Woods' action to quiet title with respect to the lien securing their home-equity loan, we reverse the court of appeals' judgment for the Lenders on this claim. We express no opinion on the merits of the Woods' assertion that they paid closing fees totaling more than 3% of the loan value, rendering their home-equity loan constitutionally noncompliant. That issue is not before us.

### C. Are the Woods entitled to a declaratory judgment for forfeiture?

Our holding that the Woods may pursue their quiet-title claim does not extend to their declaratory-judgment claim for forfeiture of all principal and interest paid on their home-equity loan. While this issue is properly before us, our opinion today in *Garofolo* forecloses the claim.

■ As an initial matter, we disagree with the Lenders' contention that the Woods did not appeal this portion of the trial court's judgment. The Woods framed their appeal as a challenge to the trial court's finding that a statute of limitations applied to their constitutional claims, including the request for a declaratory judgment for forfeiture based on the Constitution. The Woods briefed the forfeiture issue in the court of appeals, and the court of appeals addressed it. 439 S.W.3d at

588. Accordingly, we may consider the Woods' forfeiture arguments here.

■ However, the Woods' forfeiture claim is foreclosed by *Garofolo*, in which we explain that section 50(a) does not create substantive rights beyond a defense to a foreclosure action on a home-equity lien securing a constitutionally noncompliant loan and that forfeiture is not a constitutional remedy. 497 S.W.3d at 478. Here, the Woods have appealed only their causes of action for quiet title and for a declaratory judgment for constitutional forfeiture of principal and interest. The Woods have not appealed the judgment for the Lenders on the Woods' breach-of-contract and fraud causes of action. In contrast to the quiet-title action based on section 50(c), the Woods' forfeiture claim relies upon a constitutional cause of action under section 50(a). The forfeiture provision in section 50(a)(6)(Q)(x) does not create a constitutional cause of action to access that remedy and must be litigated in the context of the borrower's loan agreement. *Id.* at 475. A declaratory-judgment action based on a constitutional right to forfeiture is not available to access the forfeiture remedy. As such, summary judgment was proper on the Woods' forfeiture request.

### IV. CONCLUSION

Courts deciding whether a lien securing a constitutionally noncompliant home-equity loan was void or voidable, and thus subject to the residual statute of limitations, have assumed that such a lien must fall squarely into a common-law category. However, our Constitution's plain text requires that such liens be considered not valid unless and until the loan defects are cured. As such, we hold that no statute of limitations applies to a borrower's request for cure or attempt to quiet title on such an invalid lien. We further hold that the

Woods' claim for a declaratory judgment of their constitutional right to forfeiture is foreclosed by *Garofolo*. We affirm the court of appeals' judgment in part, reverse it in part, and remand to the trial court for further proceedings consistent with this opinion.

CHIEF JUSTICE HECHT filed a dissenting opinion, in which JUSTICE GREEN and JUSTICE WILLETT joined.

CHIEF JUSTICE HECHT, joined by JUSTICE GREEN and JUSTICE WILLETT, dissenting.

The day the Woods closed their home equity loan, July 2, 2004, they could have known whether it complied with the requirements of Article XVI, Section 50 of the Texas Constitution, and had they thought it did not, they could have immediately insisted that any noncompliance be cured. They did nothing, apparently happy to have the loan. Eight years later, long after the original lender had parted with the note, they sued the current holder, HSBC Bank, for what are fairly characterized as technical violations of the constitutional requirements, seeking to invalidate the lien on their homestead securing the loan. They have now abandoned all of their complaints but one—one involving at most a few hundred dollars— that respondents have not conceded. The Court holds that the Woods could have waited as long as they liked to sue, indeed, that the Constitution itself gives them this right. The Court's position, injecting instability into land titles, has been

rejected by the Fifth Circuit and by four Texas Courts of Appeals—every appellate court that has considered the matter. I would join them and therefore respectfully dissent.

A home equity loan that does not comply with Section 50 is invalid. The simple question is *when*: when the noncompliance occurs, or after a failure to cure as allowed by Section 50? If the latter, a borrower's complaint is subject to the residual four-year statute of limitations, running from the closing date.[1] If the former, no statute of limitations applies.

Section 50(a) provides that the homestead is "protected from forced sale" with specific exceptions.[2] Section 50(c) states: "No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt *described by* this section...."[3] In context, a "valid" lien is one that can be foreclosed.[4] Home equity loans are described by Section 50(a)(6), which describes an "extension of credit", secured by a lien on a homestead, that meets various requirements.[5] A few include:

- the total debt secured by the homestead must not exceed 80% of its fair market value when the loan is made;[6]

- certain fees must not exceed 3% of the original principal amount of the loan;[7]

- the loan must not close before the 12th day after the borrower submits a loan application and the lender gives a pre-

---

1. Tex. Civ. Prac. & Rem. Code § 16.051.

2. Tex. Const. art. XVI, § 50(a).

3. *Id.* § 50(c) (emphasis added).

4. *Garofolo v. Ocwen Loan Serv.*, 497 S.W.3d 474, 478 (Tex.2016) ("[Section 50(a)] simply describes what a home-equity loan must look

like if a lender wants the option to foreclose on a homestead upon borrower defaults.").

5. Home equity loans are also addressed in other parts of Section 50.

6. Tex. Const. art. XVI, § 50(a)(6)(B).

7. *Id.* § 50(a)(6)(E).

scribed notice regarding home equity loans; [8]

- the loan must not close before one business day after the homeowner receives a copy of the loan application and itemized closing statement; [9]
- the loan must close at an office of the lender, an attorney, or a title company; [10]
- the borrower must be given a copy of all signed loan documents; [11]
- the borrower must be given three days to rescind the loan [12] and notified of that right; [13] and
- when the loan is paid, the borrower must be given the note and a release of lien. [14]

These are but a few of the many requirements. [15]

Section 50(a)(6)(Q)(x) provides that, with an exception not pertinent here,

the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply [in one of several prescribed ways]. [16]

The ways in which a lender or note holder may cure noncompliance include remitting overcharges, [17] modifying the loan, [18] and delivering documents and obtaining signatures. [19] If those fail to cure the noncompliance, the lender or note holder can cure by offering the borrower $1,000 and the opportunity to refinance at no cost. [20]

Although the cures are expressly intended to avoid forfeiture of principal and interest, we held in *Doody v. Ameriquest Mortgage Co.* that they also preserve the validity of the lien securing the loan. [21] *Doody*'s holding is critical to this case. There, the home equity lender discovered after the loan was made that it had charged the borrowers more than 3% of the principal in fees and cured its noncompliance by refunding the excess. The borrowers nevertheless sued, contending that the cure provisions avoided only forfeiture, not invalidation of the lien on their homestead, pointing to the language of Section 50(a)(6)(Q)(x), which mentions only forfeiture. [22] We rejected that contention. By

---

**8.** *Id.* § 50(a)(6)(M)(i).

**9.** *Id.* § 50(a)(6)(M)(ii).

**10.** *Id.* § 50(a)(6)(N).

**11.** *Id.* § 50(a)(6)(Q)(v).

**12.** *Id.* § 50(a)(6)(Q)(viii).

**13.** *Id.* § 50(g) (paragraph (Q)(8) of the prescribed notice).

**14.** *Id.* § 50(a)(6)(Q)(vii).

**15.** *See Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 571 n. 14 (Tex.2013) ("With just under 6,000 words and over 150 sub-parts, Section 50 is by far the longest, most complex section of the Texas Constitution.").

**16.** TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).

**17.** *Id.* § 50(a)(6)(Q)(x)(a).

**18.** *Id.* § 50(a)(6)(Q)(x)(b)–(c), (e).

**19.** *Id.* § 50(a)(6)(Q)(x)(d).

**20.** *Id.* § 50(a)(6)(Q)(x)(f). A lender's lack of authority to make home equity loans and the absence of a written loan agreement signed by each owner and each owner's spouse cannot be cured. *Id.* § 50(a)(6)(Q)(xi).

**21.** 49 S.W.3d 342, 347 (Tex.2001).

**22.** *Id.* at 343.

curing as it had, the lender avoided forfeiture and preserved the validity of the homestead lien.[23]

Since Section 50(c) invalidates a lien on a homestead not "described by" the Section, the effect of *Doody*'s holding is that a home equity loan is described by the cure provisions as well as the loan requirements. It is as if Section 50(a)(6)(Q)(x) read as follows:

> the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit, **and the lien on the homestead securing the extension of credit shall be invalid,** if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply [in one of several prescribed ways].

Thus, neither a forfeiture nor an invalidation of a homestead lien occurs until the lender has both failed to comply with its obligations under the loan requirements and failed to cure. Though *Doody* did not focus on the timing of an invalidation of a homestead lien, the holding makes clear that it occurs only after a failure to cure.

This is consistent with other provisions of Section 50. Section 50(a) protects the homestead from forced sale with exceptions. The subject of the provision is the enforcement of a lien on a homestead, not whether the lien is in some abstract sense void. Section 50(i) provides that "[a] purchaser for value without actual knowledge may conclusively presume that a lien securing an extension of credit described by Subsection (a)(6) of this section was a valid lien securing the extension of credit with homestead property" under certain circumstances.[24] The Court reads this provision as abolishing the common law rule that a void instrument conveys nothing, not even to a bona fide purchaser for value. But a better interpretation is that a bona fide purchaser need not be concerned that a lien may be invalid but is protected by a conclusive presumption that the lien actually was valid. Similarly, Section 50(h) provides that a lender or assignee for value "may conclusively rely" on the borrower's acknowledgment of the fair market value of the home under certain circumstances.[25] The provision assumes the lien is valid until challenged as noncompliant and uncured.

Compliance with the constitutional requirements is not always clear or easily determined. Here, the Woods initially alleged that their loan was noncompliant in four particulars: the total-indebtedness-to-value ratio exceeded 80%, they paid fees in excess of 3% of principal, they were not informed of their right to rescission within three days of closing, and they never received copies of all the loan documents. They appear to have abandoned all but the excessive fees allegation, and HSBC Bank does not concede that excessive fees were charged. The Woods' position is that an otherwise apparently valid lien has always been invalid, only no one knew it, and will continue to be invalid until HSBC Bank cures the noncompliance. This theory of metaphysical invalidity is a cynical inversion of ordinary assumptions in dealing with land titles: that home equity loans

23. *Id.* at 345.

24. TEX. CONST. art. XVI, § 50(i).

25. *Id.* § 50(h).

are potentially invalid though unchallenged and without an opportunity for cure.

I agree with the Court that if a home equity lien is valid subject to being invalidated for noncompliance with the constitutional loan requirements and a failure to cure, then the borrower must sue to challenge the lien within four years of the alleged noncompliance—i.e., from the closing of the loan. Because the Court holds that a homestead lien is invalid from the moment of noncompliance, a borrower has forever to challenge it—after evidence and witnesses are gone, and proof has become difficult or impossible.

Every appellate court that has addressed the issue has concluded that the four-year statute of limitations applies to claims like those brought by the Woods: the U.S. Court of Appeals for the Fifth Circuit, and the Texas Courts of Appeals for the Third, Fifth, Sixth, Thirteenth, and Fourteenth Districts.[26] They are correct.

I respectfully dissent.

---

26. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir.2013); *Kyle v. Strasburger*, No. 13-1300609-CV, 2015 WL 7567523, at *3-5 (Tex.App.—Corpus Christi Nov. 24, 2015, pet. filed) (mem.op.) (case no.16-0046); *In re Estate of Hardesty*, 449 S.W.3d 895, 911-912 (Tex.App.—Texarkana 2014, no pet.); *Wood v. HSBC Bank USA*, 439 S.W.3d 585, 590-592 (Tex.App.—Houston [14th Dist.] 2014, pet. granted) (the instant case); *Santiago v. Novastar Mortg., Inc.*, 443 S.W.3d 462, 469-470 (Tex.App.—Dallas 2014, pet. denied); *Williams v. Wachovia Mortg. Corp.*, 407 S.W.3d 391, 394-397 (Tex.App.—Dallas 2013, pet. denied); *Schanzle v. JPMC Specialty Mortg. LLC*, No. 03-09-00639-CV, 2011 WL 832170, *4 (Tex.App.—Austin March 11, 2011, no pet.).