

# NUMBER 13-20-00466-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOHN LANDER,**                                                                                  **Appellant,**

**v.**

**THE BANK OF NEW YORK MELLON
F/K/A THE BANK OF NEW YORK, AS
TRUSTEE FOR THE CERTIFICATEHOLDERS
CWABS, INC. ASSET-BACKED
CERTIFICATES SERIES 2006-23**                                                   **Appellee.**

---

### On appeal from the 224th District Court
### of Bexar County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Longoria
### Memorandum Opinion by Justice Benavides

Appellant John Lander appeals from a summary judgment granted in favor of

appellee, Bank of New York Mellon f/k/a the Bank of New York, as Trustee for the

Certificateholders CWABS, Inc. Asset-backed Certificates, Series 2006-23 (the Bank), that authorized the Bank to judicially foreclose on Lander's homestead. In a single issue, Lander contends the trial court erred in granting summary judgment because the Bank did not meet its burden to show the home equity lien foreclosed upon complied with Article XVI, § 50 of the Texas Constitution. *See* TEX. CONST. art. XVI, § 50.

We reverse and remand.

## I.     BACKGROUND[1]

The facts of this case are generally undisputed. Lander obtained a home equity loan on October 23, 2006, and the debt was secured by his homestead. On November 28, 2011, the original lender, America's Wholesale Lender, transferred ownership of the lien to the Bank. At a certain point, Lander defaulted on the loan. The Bank filed suit for an expedited foreclosure against Lander in both 2013 and 2016, but the results of those proceedings are not apparent from the record.

On May 1, 2017, Lander sued the Bank for breach of contract and fraud. In his petition, Lander alleged, "The manner in which the home equity loan was created and closed clearly failed to conform to the requirements under Texas law, specifically Article 16, [§] 50, of the Texas Constitution." Among other things, Lander alleged that "[t]he purported written agreement failed to include a signed fair market value affidavit." *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix).

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

On September 11, 2017, the Bank filed its original answer. Over the course of the proceedings, the Bank amended its answer to include a counter petition. In its third amended answer and counter petition filed on November 19, 2018, the Bank entered a general denial; asserted several affirmative defenses; counterclaimed for breach of contract, judicial foreclosure, and equitable subrogation; and requested declaratory judgment authorizing non-judicial foreclosure.

On December 11, 2018, the Bank filed a motion for summary judgment, asserting there was no evidence of Lander's claims against it, and that it had conclusively established it was entitled to judgment on its counterclaim of judicial foreclosure. In the section on Lander's breach of contract claim, the Bank alleged that

> [t]hough [Lander] may argue . . . [the acknowledgment of fair market value] was not signed by the lender, the version of [§] 50(a)(6)(Q)(v) in effect when his loan closed required only that the lender "provide the owner of the homestead a copy of all documents signed by the owner related to the extension of credit."

*See id.* art. XVI, § 50(a)(6)(Q)(v) (amended 2007). "Thus," according to the Bank, "even a lender who provided [an] unsigned copy of the acknowledgment of [f]air [m]arket [v]alue . . . would have been compliant at the time of loan closing." Its counterclaim for judicial foreclosure incorporated this statement.

Attached to the motion for summary judgment as evidence was an acknowledgment of fair market value signed only by Lander and a business records affidavit signed by the mortgage servicer who averred that the acknowledgment was a "true and correct copy" from the "loan origination file." The Bank also attached the deed of trust and home equity affidavit and agreement signed by Lander in which he averred

3

that both he and the lender signed a written acknowledgment of fair market value on the date the extension of credit was made.

On March 15, 2019, Lander filed a response to the Bank's motion for summary judgment. In response to the Bank's no-evidence motion for summary judgment on his breach of contract claim, Lander stated, "[T]he closing documents are missing several sets of initials from [Lander] and several sets of signatures from the Lender itself." However, he only briefly addressed the counterclaim for judicial foreclosure, stating, "For reasons previously discussed, the lien is invalid due to [the Bank]'s breach of contract and fraudulent actions, so [the Bank] has no such right or entitlement to a judicial foreclosure."

Lander also amended his petition on March 15, 2019, and further clarified that "[t]he purported written agreement failed to include a fair market value affidavit that was signed by the Lender itself." However, Lander did not explicitly raise any affirmative defenses to the Bank's counterclaim for foreclosure in any of his pleadings.

The Bank filed a reply to Lander's response on March 28, 2019, acknowledging that Lander's position was that the Bank was not entitled to foreclose because the loan was not in compliance with the Texas Constitution, but reiterating that it had "correctly followed the constitutional provisions," and asserting that it was Lander's burden to prove constitutional noncompliance.

On May 7, 2019, the trial court granted the Bank's motion for summary judgment "in its entirety." Because Lander had also sued a third party, Alfie Canda, the summary judgment was not final. At the Bank's request, the trial court severed Lander's claims

4

against it into a separate cause, but the court did not sever the Bank's counterclaim for judicial foreclosure. Lander appealed from the severed cause, and the Fourth Court of Appeals affirmed the summary judgment against Lander on his breach of contract and fraud claims. *Lander v. Bank of N. Y. Mellon*, No. 04-19-00731-CV, 2020 WL 5370596, at *3 (Tex. App.—San Antonio Sep. 9, 2020, no pet.) (mem. op.). On September 29, 2020, the trial court dismissed Alfie Canda from the case, and the order granting summary judgment on the Bank's counterclaim for foreclosure became final.[2] This appeal followed.

## II. MOTION FOR SUMMARY JUDGMENT

In his sole issue on appeal, Lander contends the trial court erred in granting the Bank's motion for summary judgment, as the Bank did not meet its burden to show the home equity lien complied with Article XVI, § 50 of the Texas Constitution.

### A. Standard of Review

We review a trial court's decision to grant a traditional motion for summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When reviewing a traditional motion for summary judgment, we accept the nonmovant's evidence as true and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sanchez v. Stripes LLC*, 523 S.W.3d 810, 812 (Tex. App.—San Antonio 2017, pet. denied).

To prevail on a traditional motion for summary judgment, the moving party bears the burden to show that there is no issue of material fact, and that it is entitled to judgment

---

[2] Because Alfie Canda was dismissed from the case at the trial level, she is also not a party to this appeal. *See Grohn v. Marquardt*, 487 S.W.2d 214, 215–16 (Tex. Civ. App.—San Antonio 1972, writ ref'd n.r.e.) (citing *Gunn v. Cavanaugh*, 391 S.W.2d 723 (Tex. 1965)).

as a matter of law. *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). Grounds for summary judgment must be expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); TEX. R. CIV. P. 166a(c). An appellate court is not permitted to "read between the lines, infer or glean from the pleadings or the proof" any grounds for summary judgment other than those expressly presented to the trial court. *McConnell*, 858 S.W.2d at 343. In order to conclusively establish the grounds expressly presented, the motion must identify or address the specific cause of action and its elements. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990).

## B.    Applicable Law

Article XVI, § 50 of the Texas Constitution has long ensured protection of the homestead. *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 545 (Tex. 2016). When interpreting the Constitution, we rely heavily on its literal text and must give effect to its plain meaning. *Id.* (citing *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex. 2000)). "We strive to give constitutional provisions the effect their makers and adopters intended." *Id.* (quoting *Stringer*, 23 S.W.3d at 355). Article XVI, § 50 of the Constitution provides that a homestead in Texas is protected from forced sale for the payment of all but a few debts. TEX. CONST. art. XVI, § 50(a).

"The Texas Constitution allows a home-equity lender to foreclose on a homestead only if the underlying loan includes specific terms and conditions." *Garofolo v. Ocwen Loan Servicing, LLC*, 497 S.W.3d 474, 475 (Tex. 2016). The terms and conditions listed in Article XVI, § 50(a) are not constitutional rights and obligations unto themselves. *Id.*

6

Rather, "[a]s to constitutional rights, [Article XVI, §] 50(a) creates but one: freedom from forced sale to satisfy debts other than those described in its exception." *Id.* at 478. Article XVI, § 50(a) allows an extension of credit to be secured by the homestead if, among other things, it "is made on the condition that" both the lender and homeowner "sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made." TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix).

"[C]ompliance [with Article XVI, § 50(a)] is measured by the loan as it exists at origination and whether it includes the terms and conditions required to be foreclosure-eligible." *Garofolo*, 497 S.W.3d at 478. A lien that fails to comply with Article XVI § 50(a) "[is] invalid from origination [and] remains invalid until it is cured." *Wood*, 505 S.W.3d at 549. An invalid lien "can never have any effect, even after the property is no longer impressed with the homestead character." *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991). If a lien fails to comply with the list of requirements prescribed by Article XVI, § 50(a), the Constitution provides lenders with the ability to cure their noncompliance. TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). "These cure provisions are the sole mechanism to bring a loan into constitutional compliance." *Wood*, 505 S.W.3d at 549. If a borrower provides adequate notice of an issue of constitutional noncompliance to a lender, and the lender "fails to correct its failure to comply not later than the 60th day after the date the lender . . . is notified by the borrower of the lender's failure to comply," then the lender "shall forfeit all principal and interest of the extension of credit." *Id.* § 50(a)(6)(Q)(x).

To give adequate notice to a lender or holder of a failure to comply with their constitutional obligations, a borrower must take reasonable steps to notify the lender or holder of the alleged failure to comply. 7 TEX. ADMIN. CODE § 153.91(a). The notification must include: (1) an identification of the borrower; (2) an identification of the loan; and (3) a description of the alleged failure to comply. *Id.* However, the borrower need not cite the specific constitutional provision that the lender or holder allegedly violated. *Id.* § 153.91(b). Even without notice from the borrower, "lenders are permitted, and indeed should be encouraged, to cure constitutional noncompliance on their own." *Wood,* 505 S.W.3d at 549.

**C.    Analysis**

To show entitlement to judicial foreclosure, both Lander and the Bank agree the Bank was required to conclusively establish that: (1) a debt exists; (2) the debt was secured by a lien created under Article XVI, § 50(a)(6) of the Texas Constitution; (3) an amount of the indebtedness was due and unpaid; and (4) Lander received notice of default and acceleration. *See Huston v. U.S. Bank Nat'l Ass'n*, 988 F.Supp.2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x. 306 (5th Cir. 2014); *Bowman v. CitiMortgage, Inc.*, 768 F. App'x 220, 223 (5th Cir. 2019); *see also Babineaux v. Citimortgage, Inc.*, No. 02-17-00124-CV, 2017 WL 6616239, at *5 (Tex. App.—Ft. Worth Dec. 21, 2017, pet. denied) (mem. op.); *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, at *5 (Tex. App.—Dallas Feb. 23, 2018, pet. denied) (mem. op.).

The Bank's motion for summary judgment addressed the second element of its judicial foreclosure counterclaim as follows:

8

> The debt is secured by a lien created under Art. XVI, §50(a)(6) of the Texas Constitution. As evidenced by the summary judgment evidence, the lien was validly created pursuant to Art. XVI, §50(a)(6) of the Texas Constitution. The Deed of Trust specifically set out the parties' intent that the lien is created under Art. 16, §50(a)(6) of the Texas Constitution.

(footnotes omitted). Lander argues the Bank did not meet its burden to show the lien complied with Article XVI, § 50(a)(6). Conversely, the Bank argues summary judgment was proper because it was not required to present prima facie evidence of its compliance with Article XVI, § 50(a)(6) to succeed on its motion for summary judgment. Put differently, the Bank asks us to hold that compliance with the terms and conditions of Article XVI, § 50(a)(6) was not an essential element of its judicial foreclosure counterclaim.

Instead, the Bank contends that constitutional noncompliance is a matter of avoidance, the burden of which was placed on Lander after the Bank had established its prima facie case for judicial foreclosure. *See* TEX. R. CIV. P. 94 (stating that affirmative defenses and matters of avoidance must be "set forth affirmatively" in the pleadings). When a non-movant relies on a matter of avoidance or an affirmative defense to defeat summary judgment on the movant's cause of action, the non-movant must do more than merely plead the affirmative defense. *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The non-movant must produce sufficient evidence to conclusively prove or at least raise a material issue of fact as to each element of the affirmative defense. *Leonard v. Knight*, 551 S.W.3d 905, 910 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

The terms "avoidance" and "affirmative defense" are distinct but are often used by courts interchangeably. *See Zorilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015); *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 136 (Tex. 2014). An affirmative defense "defeats the plaintiff's claim without regard to the truth of the plaintiff's assertions." *Zorilla*, 469 S.W.3d at 156. A matter of avoidance is one in which "the defendant admits the conduct but seeks to avoid the legal effect by justifying an otherwise impermissible act." *Id.* "Whether classified as an affirmative defense or an avoidance, the hallmark characteristic of both categories of defense is that the burden of proof is on the defendant to present." *Id.*

Our supreme court has expressed reticence to interpret § 50(a) in a manner that would "permit lenders to ignore the Constitution and foreclose on the homesteads of unwitting borrowers who do not realize that their home-equity loans violate the Constitution." *Wood*, 505 S.W.3d at 549. However, we note the prevailing rule in state and federal court is that a lien's failure to comply with the constitution is an affirmative defense to foreclosure that must be established by the borrower. *See Hinton v. Nationstar Mortg. LLC*, 533 S.W.3d 44, 50 (Tex. App.—San Antonio 2017, no pet.) (holding that the trial court was not permitted to consider a claim of constitutional noncompliance when it was not pleaded by borrowers and was not tried by consent); *Wilson v. Aames Capital Corp.*, No. 14-06-00524-CV, 2007 WL 3072054, at *1 (Tex. App.—Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.) ("[J]udicial economy would dictate that a failure to comply with any of these requirements is in the nature of an affirmative defense."); *Priester v. Deutsche Bank Nat'l Tr. Co.*, 832 F. App'x 240, 249 (5th Cir. 2020) ("We do

10

not agree that, as part of its initial burden under Texas law, the party bringing a claim for judicial foreclosure must establish that the loan complies with every constitutional provision."); *but see Ford v. Bank of N. Y. Mellon*, No. 6-18-CV-00299-ADA, 2019 WL 7759097, slip op. at *4 (W.D. Tex. Nov. 15, 2019) ("Here, Trustee has not met its burden to prove that the lien exists because the evidence presented establishes a fact issue on whether the Security Instrument was unconstitutionally closed in Ford's home."); 7 TEX. ADMIN. CODE § 153.94(b) (placing burden of proof on lender to show compliance with cure provisions of Texas Constitution).

Constitutional mandates "need not be shoehorned into common-law concepts when those concepts conflict with the Constitution's plain text." *Wood*, 505 S.W.3d at 549. Under the facts of this case, Lander's assertion that the lien is invalid does not fall squarely within the common-law concepts of affirmative defenses or matters of avoidance. It was the Bank that requested summary judgment on the ground that its lien was properly created under Article XVI, § 50(a)(6). Thus, the Bank was required to establish affirmatively that there was no genuine issue of material fact as to the lien's creation under Article XVI, § 50(a)(6), and no presumption would apply in favor of this finding. *See Chavez v. Kansas City S. Ry. Co.*, 520 S.W.3d 898, 900 (Tex. 2017) (holding that presumptions cannot be used to shift burden of proof to non-movant in summary judgment proceedings). Therefore, Lander was not asserting an affirmative defense nor a matter of avoidance by claiming "the lien was never properly created." He was specifically denying an element that the Bank sought to establish.

Our sister court has held that a lender need not address constitutional noncompliance in its motion for summary judgment on a foreclosure claim if the borrower has not specifically asserted it in its live pleadings. *See Alexander v. Am. Home Mortg. Servicing, Inc.*, No. 04-16-00788-CV, 2017 WL 4014626, at *3 (Tex. App.—San Antonio Sep. 3, 2017, no pet.) (mem. op.). However, when a borrower has raised a specific issue of constitutional irregularity, our sister court has implied that it becomes the lender's obligation to put forth evidence that the alleged irregularity has been cured. *See id.* at *4.

Here, it is undisputed that Lander raised the issue of constitutional noncompliance in his pleadings. Both his original and his amended petition alerted the Bank to this allegation that its acknowledgment of fair market value was unsigned. And, moreover, in its motion for summary judgment, the Bank argued that even if the acknowledgment of fair market value was not signed by the lender, its lien was constitutionally compliant nonetheless.[3] "Motions for summary judgment 'stand or fall on the grounds specifically set forth in the motions.'" *410/W. Ave. Ltd. v. Tex. Tr. Sav. Bank, F.S.B.*, 810 S.W.2d 422, 424 (Tex. App.—San Antonio 1991, no writ) (quoting *Ortiz v. Spann*, 671 S.W.2d 909, 914 (Tex. App.—Corpus Christi–Edinburg 1984, writ ref'd n.r.e.)).

---

[3] The Bank apparently interpreted Lander's constitutional noncompliance complaint regarding the acknowledgment of fair market value as a complaint that the lien violated Article XVI, § 50(a)(6)(Q)(v). *See* TEX. CONST. art XVI, § 50(a)(6)(Q)(v) ("[A]t the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit."). However, while a borrower is required to give more than a general allegation of constitutional noncompliance to provide adequate notice to a lender or holder, a borrower is not required to cite the specific constitutional provision that the lien purportedly violates in their notice to the lender or holder. *See* 7 TEX. ADMIN. CODE § 153.91(b); *Wells Fargo Bank, N.A. v. Leath*, 425 S.W.3d 525, 532–33 (Tex. App.—Dallas 2014, pet. denied). Here, Lander specifically alleged multiple times throughout the proceedings that the lien was unconstitutional because the acknowledgment of fair market value was not signed by both parties. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix); *Leath*, 425 S.W.3d 532–33.

12

The position of the Bank in moving for summary judgment was that its lien was created in compliance with Article XVI, § 50(a)(6) of the Texas Constitution. "[T]he fundamental guarantee of [§] 50(a)" is that the homestead will be protected from foreclosures on any debt that does not contain the terms and conditions listed therein. *Garofolo*, 497 S.W.3d at 478. We must construe § 50(a)(6) in harmony with § 50(c). *Wood*, 505 S.W.3d at 548. Section 50(c) begins with the proposition that no lien on a homestead "shall ever be valid" unless it secures a debt that meets § 50(a)(6)'s requirements. TEX. CONST. art. XVI, § 50(c). One of the requirements of § 50(a)(6) is that "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made." *Id.* art. XVI, § 50(a)(6)(Q)(ix). The Bank's summary judgment evidence included a business records affidavit sworn to by the mortgage servicer that the acknowledgment of fair market value signed only by Lander was a "true and correct copy" from the "loan origination file." Thus, the affidavit rendered untenable the Bank's position that it had a valid lien. *See Womack v. Allstate Ins.*, 296 S.W.2d 233, 237 (Tex. 1956) ("[W]hen affidavits or other summary judgment evidence disclose facts which render the position of the moving party untenable, summary judgment should be denied regardless of defects which may exist in the pleadings of the opposite party."). The Bank also offered no evidence that it had attempted to cure this constitutional foible.

The Bank cites several unreported federal cases for the proposition that Lander's sworn statements that the lender signed an acknowledgment of fair market value are conclusive proof of the lien's compliance with Article XVI, § 50(a)(6)(Q)(ix). *See Sivertson*

13

*v. Citibank, N.A.*, No. 4:18-CV-169-ALM-CAN, 2019 WL 2519222, at *4 n.5 (E.D. Tex. Apr. 22, 2019) (citing *Erickson v. Wells Fargo Bank, N.A.*, No. 09-11933, 2012 WL 4434740, at *7–8 (W.D. Tex. Sep. 24, 2012)); *Sierra v. Ocwen Loan Servicing, LLC*, No. H-10-4984, 2012 WL 527940, at *4–5 (S.D. Tex. Feb. 16, 2012) (holding non-movants' "self-serving and after-the-fact affidavits" averring that they did not receive the loan closing documents did not create fact issue when compared to non-movants' contemporaneous sworn statements stating they did receive loan closing documents included in movant's summary judgment evidence).

We see no reason why these nonbinding authorities should persuade us to hold that, as a rule, sworn statements made by borrowers are incontrovertible proof of a home equity lien's compliance with our Constitution. A borrower can swear under oath that the property to which a debt is attaching to is not his homestead, but that does not permit a lender to nonetheless incumber the homestead with a debt forbidden by the constitution. *See Wood*, 505 S.W.3d at 545 (citing *Tex. Land & Loan Co. v. Blalock*, 13 S.W. 12, 13 (Tex. 1890)). Historically, "[w]hat the Constitution forbids cannot be evaded even by agreement of the parties." *Id.* And, while Lander's sworn statements may be relevant for summary judgment purposes, they are contradicted by the mortgage servicer's sworn statements. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965) ("Evidence which favors the movant's position is not considered unless it is uncontradicted."); *cf.* TEX. R. CIV. P. 166a(c) ("[S]ummary judgment may be based on uncontroverted testimonial evidence of an interested witness."). Viewing the evidence as we must, in the light most favorable to the non-movant, we conclude that

there is a genuine issue of material fact as to whether the Bank's lien complies with Article XVI, § 50(a)(6).

The Bank asserts that our sister court's decision in *Lander v. Bank of N. Y. Mellon* is dispositive with respect to the validity of the home equity loan. *See Lander*, 2020 WL 5370596, at *3. We disagree. No determination was made in that case about the lien's validity. *See id.* at *1–3. Rather, our sister court agreed that the Bank was entitled to summary judgment on Lander's breach of contract and fraud claims because Lander failed on appeal to challenge all grounds asserted by the Bank in its motion. *See id.* at *2.

Further, the Bank did not rely on any claim preclusion or "law of the case" grounds in its motion for summary judgment. The "law of the case" doctrine refers to the principle under which questions of law decided on appeal to the court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). The doctrine does not necessarily apply when the issues or facts presented in a successive appeal are not substantially similar to those involved in the first trial. *Cantu v. Guerra & Moore, LLP*, 549 S.W.3d 664, 667 (Tex. App.—San Antonio 2017, pet. denied). Application of the "law of the case" doctrine lies within the discretion of the court, depending on the particular circumstances of the case. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). Because the Bank did not rely on these grounds in its motion for summary judgment, the trial court would have abused its discretion had it granted summary judgment on such grounds. *See* TEX. R. CIV. P. 166a(c); *McConnell*, 858 S.W.2d at 343.

We thus sustain Lander's first issue and hold that there is a genuine issue of material fact as to whether the home equity lien the Bank seeks to foreclose upon complies with Article XVI, § 50(a)(6) of the Texas Constitution.

### III.  CONCLUSION

We reverse and remand the cause to the trial court for further proceedings consistent with this opinion.

GINA M. BENAVIDES
Justice

Delivered and filed on the
24th day of February, 2022.