# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20500

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2017

Lyle W. Cayce
Clerk

TINA ALEXANDER,

> Plaintiff - Appellant

v.

WELLS FARGO BANK, N.A., formerly known as WACHOVIA MORTGAGE, FSB, formerly known as WORLD SAVINGS BANK F.S.B, its successors and/or assigns; DOES 1-10,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and HIGGINBOTHAM and COSTA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Wells Fargo's predecessor in interest extended a loan to Tina Alexander, secured by a deed of trust on her homestead, as permitted under the Texas Constitution Article XVI, Section 50. Alexander fell into default and Wells Fargo initiated foreclosure. Alexander then brought this action, alleging nonconformity with the requirements for foreclosing home equity loans in Section 50(a)(6) and seeking (1) a permanent injunction preventing foreclosure and (2) forfeiture of the note's remaining principal and interest. The district

court, relying on our decision in *Preister*,[1] held that Alexander's suit was time barred and dismissed under Rule 12(b)(6). Thereafter, the Texas Supreme Court issued two opinions, *Wood*[2] and *Garofolo*,[3] in light of which Alexander argues that the district court erred in failing to amend its judgment to reinstate her claims.

We hold that *Wood* and *Garofolo* constitute intervening changes in law sufficient to justify post-judgment relief for Alexander on her claim to preclude foreclosure but not on her claim for forfeiture. We affirm in part, reverse in part, and remand for further proceedings.

I.

As this case reaches us on dismissal for failure to state a claim under Rule 12(b)(6), we treat the complaint's factual allegations and its attached documents as true.[4] In 1998, Alexander received a home equity loan from Wells Fargo, secured by a deed of trust on her home. Four years later, Alexander discovered that her copy of the loan documents did not contain an Acknowledgment of Fair Market Value signed by both parties at the time the loan was issued, as required by Article XVI, Section 50 of the Texas Constitution.[5] She requested a copy from Wells Fargo, but Wells Fargo never responded. By 2005, Alexander had fallen into default, and on June 8, 2006, Wells Fargo sent Alexander the first of several Notices of Acceleration.

Alexander responded by filing for Chapter 13 bankruptcy protection. Less than two months later, the bankruptcy was dismissed and Wells Fargo was permitted to move forward with foreclosure. On September 7, 2007, Wells

---

[1] *Preister v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667 (5th Cir. 2013).

[2] *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542 (Tex. 2016).

[3] *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474 (Tex. 2016).

[4] *See Neiman v. Bulmahn*, No. 15-31094, 2017 WL 1423321, at *2 (5th Cir. Apr. 21, 2017) (quoting *Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016)).

[5] TEX. CONST. art. XVI § 50(a)(6)(Q)(ix).

Fargo sent Alexander a second Notice of Acceleration. Shortly thereafter, Wells Fargo sent Alexander a "Reinstatement Quote," requiring payment of $105,440.15 by September 25, 2007 to reinstate the loan. On September 28, 2007, three days after the deadline to tender the reinstatement amount, Alexander wired $106,000.00 to Wells Fargo.[6] Wells Fargo responded via a letter dated October 3, 2007 that it had "received and processed the funds to reinstate" and "the loan is now due for the October 01, 2007 payment in the amount of $2,561.12."

The complaint next details a series of communications over the following two months, with Wells Fargo demanding payment and then—in response to inquiries by Alexander—either explicitly disclaiming that amount as requested in error or implicitly disclaiming that amount by sending another communication requesting a different amount. On December 11, 2007, Alexander received a notice of intent to foreclose from Wells Fargo, dated December 4, 2007, demanding a payment of $14,182.97 by January 3, 2008 or else the loan would be accelerated.

On April 25, 2008, Wells Fargo sent Alexander another Notice of Acceleration. Wells Fargo applied for judicial foreclosure in May before, nearly a year later, sending Alexander an "Escrow Breakdown" that showed no trace of the $106,000 payment she had made to reinstate the loan. In October 2009, Alexander and Wells Fargo attended a Texas state court hearing where the court ordered Alexander to make three monthly payments of $2,120. Wells Fargo demanded that Alexander make those payments through its counsel of record, which she did, but the IRS Form 1098 Mortgage Interest Statement

---

[6] Alexander avers that the excess amount was intended to cover any interest due for the three-day post-deadline period.

3

she received in January 2010 showed that Wells Fargo had not credited any of her payments against the principal balance on the note.

The complaint is silent as to the events that followed until November 2013, when the Texas state court issued an order permitting Wells Fargo to proceed with foreclosure. Wells Fargo scheduled the foreclosure sale for March 4, 2014; on the eve of sale, Alexander asked a Texas state court to halt the sale. Two days later, Wells Fargo rescinded its Notice of Acceleration, and Alexander moved to dismiss her suit without prejudice. Alexander then made several attempts to make her monthly loan payments, which Wells Fargo refused because her account was in foreclosure.

On July 28, 2014, Wells Fargo sent yet another Notice of Acceleration, and in early September, applied for expedited foreclosure. A date of sale was then set for May 5, 2015. On the eve of sale, Alexander, appearing *pro se*, again responded with a suit in the Texas state court, alleging violations of the Texas Constitution, breach of contract, negligent misrepresentation, and breach of the duty of good faith and fair dealing required under the UCC. In her prayer for relief, Alexander requested: (1) a TRO halting the foreclosure sale; (2) a preliminary injunction preventing the foreclosure sale; (3) an order requiring Wells Fargo to produce the original, executed "Fair Market Acknowledgment" for the property; (4) a permanent injunction preventing the foreclosure sale; (5) economic damages; (6) punitive damages; (7) a declaration from the Court that Wells Fargo must produce an accounting to the court and to Alexander prior to foreclosing; (7) exemplary damages; (8) equitable relief; (9) reasonable fees; (10) court costs; (11) all other relief to which Plaintiff is entitled; and (11) general relief.[7]

---

[7] Outside of the prayer for relief, Alexander's complaint also argues that forfeiture is the only appropriate remedy where a lender fails to cure a constitutional defect after receiving notice of the defect from the borrower.

16-20500

Wells Fargo removed the action to the federal district court, invoking diversity jurisdiction. Wells Fargo moved to dismiss the complaint for failure to state a claim, which the district court granted, dismissing the entire action with prejudice. Relevant to the claims before us, in dismissing Alexander's Texas Constitutional claims, the district court held that:

> Alexander's argument fails in light of Preister v. JP Morgan Chase Bank, NA, where the Fifth Circuit addressed whether a statute of limitations applies to claims under the Texas Constitution Article XVI, § 50(a)(6). . . . The Fifth Circuit concluded that the residual statute of limitations in Texas Civil Practice and Remedies Code § 16.051 "applies to constitutional infirmities under § 50(a)(6)" . . . . Under this authority Alexander's claim accrued on September 15, 1998 [when the home equity loan instrument was executed]. She did not bring this action until May 4, 2015, more than four years later. . . . Therefore, this claim has no merit.[8]

On June 9, 2016, Alexander, still appearing *pro se*, moved for post-judgment relief under Rule 59, arguing that the Texas Supreme Court case of *Wood v. HSBC Bank USA, N.A.*, decided eight days after dismissal of her complaint, explicitly held that *Preister*'s "*Erie* guess" was wrong—that no statute of limitations operates to restrict a suit for quiet title arising under Section 50(c). The district court denied Alexander's motion without explanation. Alexander timely noticed her appeal.

## II.

"We generally review a decision on a motion to alter or amend judgment for abuse of discretion, although to the extent that it involves a reconsideration of a question of law, the standard of review is *de novo*."[9] "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening

---

[8] *Alexander v. Wells Fargo Bank, N.A.*, No. H-15-1596, 2016 WL 2770547, at *9 (S.D. Tex. May 12, 2016) (citations omitted).

[9] *In re: Deepwater Horizon*, 824 F.3d 571, 577 (5th Cir. 2016) (citing *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005)).

change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact."[10] Additionally, "[a] notice of appeal from the denial of a timely Fed.R.Civ.P. 59(e) motion brings up the underlying judgment for review."[11]

We also review dismissal under Rule 12(b)(6) *de novo*,[12] "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[13] In the case at bar, the claims at issue were not dismissed for failure to plead sufficient facts, but rather because the district court found the case barred by limitations. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[14]

### III.

Alexander does not challenge the disposition of her general breach of contract claim, her negligent misrepresentation claim, or her UCC claim. The only claims at issue here are for a permanent injunction preventing the foreclosure sale and for forfeiture as provided under Article XVI, Section 50(a)(6)(Q)(xi) of the Texas Constitution.

---

[10] *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).

[11] *Martinez v. Johnson*, 104 F.3d 769, 771 (5th Cir. 1997) (citing *United States v. One 1988 Dodge Pickup*, 959 F.2d 37, 41 n.5 (5th Cir. 1992)).

[12] *Alexander v. City of Round Rock*, No. 16-50839, 2017 WL 1393702, at *2 (5th Cir. Apr. 18, 2017) (quoting *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014)).

[13] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam) (citing *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 276 (5th Cir. 1990)).

[14] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

16-20500

A.

"In Texas, 'the homestead has always been protected from forced sale, not merely by statute as in most states, but by the Constitution.'"[15] It was not until 1997 that Texas created exceptions to the constitutional ban on foreclosure for reverse mortgages and other home equity loans.[16] "[B]ut, consistent with Texas's long tradition of protecting the homestead, the amendments clearly prescribed very specific and extensive limitations on those encumbrances."[17] Article XVI, Section 50 of the Texas Constitution provides, in relevant part:

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
>
> . . .
>
> (6) an extension of credit that:
>
> . . .
>
> (Q) is made on the condition that:
>
> . . .
>
> (ix) the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made;
>
> (x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later

---

[15] *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016) (quoting *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013)).

[16] *Id.*

[17] *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 545 (Tex. 2016).

16-20500

than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by:

. . .

(d) delivering the required documents to the borrower if the lender fails to comply with Subparagraph (v) of this paragraph or obtaining the appropriate signatures if the lender fails to comply with Subparagraph (ix) of this paragraph;

. . .

(c) No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.[18]

In 2013, we addressed whether an action to have a lien declared void under Section 50 was subject to a statute of limitations.[19] At that time, the Texas Supreme Court had not spoken and the Texas appellate courts and the federal district courts were split.[20] We held that actions under Section 50 are subject to Texas's residual four-year statute of limitations.[21] It is undisputed that this was the law of this circuit at the time the district court dismissed Alexander's complaint on May 12, 2016.

On May 20, 2016, the Texas Supreme Court delivered the two opinions at the heart of this appeal: *Garofolo* and *Wood*. In *Garofolo*, we proffered, and the Texas Supreme Court accepted, two certified questions.[22] The first was whether Section 50(a)(6) creates a constitutional remedy of forfeiture where a

---

[18] TEX. CONST. art. XVI §§ 50(a)–(c).

[19] *See Preister v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 673 (5th Cir. 2013).

[20] *Id.* at 673–74.

[21] *Id.* at 674; *see also* TEX. CIV. PRAC. & REM. CODE § 16.051 (West 2016).

[22] *Garfolo*, 497 S.W.3d at 475.

lender fails to cure a defect within the sixty-day period described in Section 50(a)(6)(Q)(x).[23] The court answered that question in the negative, holding that "section 50(a) does not create, allow, or regulate home-equity lending. . . . It simply describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default."[24] The court further held that "[a] lender that includes the terms and conditions in the loan at origination but subsequently fails to honor them might have broken its word, but it has not violated the constitution."[25]

The second certified question asked whether a borrower can seek the forfeiture remedy provided for in Section 50(a)(6)(Q)(x) through a breach of contract claim absent any actual damages suffered.[26] The court answered no under the facts before it, treating how forfeiture might be applicable to a lender's failure to comply with some of the constitutionally-mandated terms. The court described a suit for breach of contract as "an appropriate cause of action for relief from a lender's post-origination failure to honor the terms and conditions."[27] "[I]f a lender fails to meet its obligations under the loan, forfeiture is an available remedy only if one of the six corrective measures can

---

[23] *Id.* at 476–77.

[24] *Id.* at 478.

[25] *Id.* at 479.

[26] *Id.*

[27] *Id.*; *accord Kyle v. Strasburger*, No. 16-0046, 2017 WL 2608344, at *3 (Tex. June 16, 2017) ("[W]hile forfeiture may be an appropriate *contractual* remedy for a lender's failure to comply with its home-equity loan obligations, forfeiture is not an independent cause of action under the Texas Constitution.").

actually correct the underlying problem and the lender nonetheless fails to timely perform the relevant corrective measure."[28]

The same day, the Texas Supreme Court addressed the question of whether actions for quiet title under Section 50(c) are subject to Texas's residual statute of limitations.[29] The court disagreed with this Court's "*Erie* guess" from *Preister*, holding that "a lien securing a constitutionally noncompliant home-equity loan is not valid before the defect is cured. We therefore conclude that no statute of limitations applied to an action to quiet title on an invalid home-equity lien."[30] "The Constitution's plain text compels that homeowners' right to seek a declaration of an invalid lien not be bound by a statute of limitations."[31]

## B.

We turn first to Alexander's appeal of the district court's refusal to reinstate her claim seeking to permanently enjoin Wells Fargo from foreclosing on her homestead. She argues that, construed liberally, her complaint stated a claim for quiet title based on Wells Fargo's failure to timely supplement the missing Acknowledgment of Fair Market Value—a claim of the type that the Texas Supreme Court in *Wood* held is not subject to any statute of limitations.[32] Because *Wood* made plain that our "*Erie* guess" in *Preister* was wrong, and because an intervening change in law is a proper grounds for

---

[28] *Garofolo*, 497 S.W. 3d at 482. Important to the court's decision was the fact that, in *Garofolo*, the note had already been satisfied and the alleged deficiency by the lender was failing to provide the homeowner with a release of the lien following satisfaction. *Id.* at 481. The court noted the absurdity of attempting to cure this defect with the "catch all" remedy in subparagraph (f): "a $1,000 refund and an offer to refinance her loan . . . . [o]f course, there was nothing to refinance—Garofolo had already paid off her loan—and a $1,000 payment would not buy her a document only Ocwen could provide." *Id.*

[29] *Wood*, 505 S.W.3d at 543.

[30] *Id.* at 548.

[31] *Id.* at 550.

[32] *Id.*

amending a judgment under Rule 59(e),[33] she argues that the district court abused its discretion in not reinstating her claim.

Wells Fargo lodges two arguments in response. First, Wells Fargo argues that Wood only speaks to actions for quiet title, which Alexander did not adequately plead. Because the complaint does not contain the words "quiet title," Wells Fargo argues that we must look to the remedies Alexander sought in order to construe her claim.[34] Those remedies, Wells Fargo avers, are incompatible with her argument on appeal, because: (1) Alexander sought damages and attorney's fees, neither of which are recoverable in an action for quiet title; (2) Alexander sought orders to have Wells Fargo produce the Fair Market Acknowledgement and accountings, neither of which are compatible with a claim that the underlying lien is invalid; and (3) Alexander's request for a permanent injunction was to prevent Wells Fargo "from taking possession" of her home, which concerns possession and the right of enjoyment—a request that "sounds in the nature of a leasehold right" rather than a claim related to title.

Second, as expressed at oral argument, Wells Fargo argues that Alexander is not entitled to any relief under Section 50(c) because the loan complied with the Texas Constitution by containing the terms required under Section 50(a). Wells Fargo directs us to the Texas Supreme Court's opinion in *Garofolo*, holding, in part, that:

---

[33] *Schiller*, 342 F.3d at 567-68 (citing *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)).

[34] In support of this argument, Wells Fargo cites to *Austin v. Shalala*, where we construed an action to recover social security payments, initiated by the United States, to determine whether the requested relief was a traditional remedy at law—triggering a right to a jury trial under the Seventh Amendment—or at equity. 994 F.2d 1170, 1176 (5th Cir. 1993). Wells Fargo has not directed us to any case law supporting the proposition that we should strictly construe the pleadings of a pro se plaintiff.

16-20500

> [Section 50(a)(6)'s] terms and conditions are not constitutional rights and obligations unto themselves. They only assume constitutional significance when their absence in a loan's terms is used as a shield from foreclosure. . . . From a constitutional perspective, compliance is measured by the loan as it exists at origination and whether it includes the terms and conditions required to be foreclosure-eligible. . . . A lender that includes the terms and conditions in the loan at origination but subsequently fails to honor them might have broken its word, but it has not violated the constitution.[35]

Wells Fargo thus reasons that, because the note contained the required terms, the loan was eligible for foreclosure under the Texas Constitution despite having admittedly never conformed to those terms.

As to Wells Fargo's first argument—that Alexander did not adequately plead her claim—we decline to so strictly construe a *pro se* litigant's complaint as to bar relief for omitting the legal term "quiet title" or because her prayer for relief included remedies not available to her.[36] Rather, construing Alexander's complaint liberally, she adequately pled her claim under Section 50(c) by alleging noncompliance with Section 50(a)(6)(Q)(ix)'s requirement that the loan contain an Acknowledgement of Fair Market Value and requesting a permanent injunction against foreclosure.

Wells Fargo's second argument—that inclusion of the requisite terms is sufficient to render the lien foreclosable even if those terms are broken at signing—runs contrary to *Wood*. There, the Texas Supreme Court held that:

---

[35] *Garofolo*, 497 S.W.3d at 478.

[36] *See, e.g.*, *Kaltenbach v. Richards*, 464 F.3d 524, 527 (5th Cir. 2006); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).

Section 50(c) starts with the premise that a lien securing a noncompliant loan is never valid. Implementing a section 50(a)(6)(Q)(x) cure provision brings the loan into constitutional compliance, thereby validating the accompanying lien. These cure provisions are the sole mechanism to bring a loan into constitutional compliance. Further, while a lender has 60 days to cure after notice, the borrower has no corresponding deadline by which it must request cure. A lien that was invalid from origination remains invalid until it is cured. In so holding, we do not create a new common-law category of liens that are "void until cured." We are merely interpreting the plain language of the Constitution, which defies common-law categorization.[37]

Section 50(a)(6)(Q)(x) allows lenders to cure a failure to include documents required under Section 50(a) and is the "sole mechanism" under the Texas Constitution for curing a defect in a loan, validating the lien it secures. If, as Wells Fargo avers, merely including the 50(a) terms in the original loan document were enough, then 50(a)(6)(Q)(x) would not be necessary to "bring[] the loan into constitutional compliance," but would instead only function to cure contractual breaches.

While *Wood* and *Garofolo* may initially present as in tension, they examine and construe different subsections of Section 50. *Garofolo* involved only Section 50(a)[38]—the section housing the required terms in all foreclosure-eligible home equity loans—concluding that "[a]s to constitutional rights, section 50(a) creates but one: freedom from forced sale to satisfy debts other than those described in its exceptions."[39] *Wood*, on the other hand, interpreted Section 50(c), which "broadly declar[es] the lien invalid if the underlying loan

---

[37] *Wood*, 505 S.W.3d at 549.

[38] *Id.* at 546 ("In *Garofolo* we interpret only section 50(a), which sets the terms home-equity loans must include in order to be foreclosure-eligible."); *see also Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017) (holding that claims under Section 50(a)(6) are not subject to the four-year statute of limitations).

[39] *Garofolo*, 497 S.W.3d at 478.

does not comply with section 50."[40] Together, they form a coherent whole: while including the required Section 50(a)(6) terms and conditions in the loan document is a necessary element of a valid lien under Texas law, the terms alone are not sufficient—the lender must also actually comply with them.

Assuming the factual allegations in the complaint true, Alexander has sufficiently pled a claim under Section 50(c), which, as *Wood* held, is not subject to any statute of limitations. The district court's failure to reinstate the claim after *Wood* was error. On return to the district court, Alexander may proceed with her claim seeking to preclude foreclosure.

C.

Alexander likewise argues that the district court erred in not reinstating her action under the Texas Constitution for forfeiture. In *Garofolo*, the Texas Supreme Court held that Section 50(a)(6)(Q)(x) does not itself create a cause of action for forfeiture, but rather provides a contractual term that must be included in foreclosure-eligible loans, allowing for a forfeiture remedy in certain contractual breach contexts[41]; that plaintiffs seeking forfeiture must do so through a breach of contract action. Alexander argues she adequately pled a claim of breach because her complaint alleged that: (1) there was no Acknowledgement of Fair Market Value signed by both parties at the time the loan was issued as required by Section 50(a)(6)(Q)(ix); (2) she notified Wells Fargo of this deficiency; and (3) Wells Fargo did not remedy the problem within 60 days,[42] which, if true, might well trigger the contractual forfeiture remedy. Alexander also pled that "this violation can only be remedied as provided by

---

[40] *Wood*, 505 S.W.3d at 546.

[41] *Garofolo*, 497 S.W.3d at 482.

[42] Alexander alleged that Wells Fargo never responded to her 2002 letter notifying them of the lack of the document.

14

16-20500

the Texas Constitution article XVI, Section 50(A)(6)(Q)(10)," the subsection providing for forfeiture.

The district court sustained the limitations defense and dismissed Alexander's claim.[43] Alexander persists, arguing that her forfeiture claim is not time barred. First, she argues that the policy underlying *Wood*, "protect[ing] Texas homeowners and the Texas economy by ensuring a stable lending market. . . . discouraging improvident lending by originating lenders and encouraging appropriate due diligence by lenders buying those loans in the secondary market,"[44] "applies as much to the constitutional protection of forfeiture as to the constitutional protection against foreclosure." She urges that we either make an "*Erie* guess" and extend *Wood* to forfeiture actions or else certify this question to the Texas Supreme Court. Alternatively, Alexander argues her May 2015 complaint served as a second notice to Wells Fargo that the loan did not comply with the requirements of Section 50(a)(6) and that Wells Fargo's failure to cure after receiving the complaint was a second breach, for which her suit is timely.[45]

Wells Fargo replies that a breach of this stripe occurs only once—at the point the loan closes without the necessary document. Citing *Garofolo*, Wells Fargo argues that a failure to cure is not itself a breach, but rather the

---

[43] *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) ("A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues. It is well-settled law that a breach of contract claim accrues when the contract is breached.") (citations omitted).

[44] *Wood*, 505 S.W.3d at 550,

[45] Alexander's argument is that, on breach, the non-breaching party may either sue or else continue under the contract—later-in-time breaches serve as separate claims with their own accrual dates. In support of this argument, she cites to *Barker v. Eckman*, a case involving serial breaches of a bailment contract where the Texas Supreme Court held that "claims for . . . serial breaches accrued as soon as [the plaintiff] had the right to sue on them individually, that is, immediately upon the occurrence of each breach." 213 S.W.3d 306, 311 (Tex. 2006). This is not a serial breach case, however. The breach—the failure to include the required document—only occurred once, at origination.

15

contractual trigger for the harsh forfeiture penalty.[46] Because the alleged breach here was a failure to include an Acknowledgement of Fair Market Value signed by both parties, the breach occurred at the closing of the loan in 1998. And because, under Texas law, the right of action for a breach of contract claim accrues at the time of the breach,[47] the statute would have run in 2002, roughly 13 years before Alexander brought her action.

We agree with Wells Fargo: a breach of the Section 50(a)(6)(Q)(x) term occurs at the point the lender fails to comply with the term, not later when the lender fails to cure.[48] Ordinarily, the proper accrual date would be the date of closing. However, "[i]n some types of cases, the discovery rule may defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action. In order for the discovery rule to apply, the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable."[49] Nothing before us indicates that the omission of the required document was "inherently undiscoverable," although ultimately it makes little difference. Using either the date of closing—1998—or the date of discovery—2002—the four-year limitations period had long run when Alexander brought her claim in 2015. We hold that Alexander's complaint alleges facts that are

---

[46] *Garofolo*, 497 S.W.3d at 481.

[47] *Stine*, 80 S.W.3d at 592 (citing TEX. CIV. PRAC & REM. CODE § 16.051); *see also Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (holding that "a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury") (citing *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex. 1977)).

[48] "[T]he lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified . . . ." TEX. CONST. art. XVI §§ 50(a)(6)(Q)(x).

[49] *Barker*, 213 S.W.3d at 311-12 (citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)).

sufficient to state a claim for a breach of the loan agreement, but her suit was not timely filed.

**\*\*\*\***

*Wood* represents an intervening change in Texas law, and the district court should have amended the judgment under Rule 59 to allow Alexander's claim for quiet title to go forward in its light. We reverse the denial of Rule 59 post-judgment relief and remand Alexander's claim for quiet title, but we affirm the refusal to amend the judgment as to Alexander's forfeiture claim, as that claim is barred under Texas's four year statute of limitations for breach of contract actions.