# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20682

United States Court of Appeals
Fifth Circuit

**FILED**
January 10, 2019

Lyle W. Cayce
Clerk

ABDEL K. FUSTOK; MALAK FUSTOK,

      Plaintiffs - Appellants

v.

BANK OF AMERICA, N.A.,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:16-CV-2867

Before STEWART, Chief Judge, and DENNIS and WILLETT, Circuit Judges.

PER CURIAM:[*]

Plaintiffs Abdel Fustok and Malak Fustok, a married couple, refinanced the loan on their home in Texas in 2007 with Bank of America. Malak was not present for that transaction, but two years earlier had granted her husband authority to act on her behalf in refinancing their home through a durable power of attorney. After they fell behind on payments, the Fustoks sued Bank of America, claiming, among other things, that the 2007 refinancing was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20682

defective because the power of attorney did not meet the requirements of the Texas Constitution relative to homestead lien contracts and because Bank of America did not properly bind itself to the remedy of forfeiture for noncompliance.  The district court dismissed the Fustoks' claims on summary judgment, holding they were precluded as a matter of law.  We agree, and therefore AFFIRM.

## I

The Fustoks have owned their home in Houston, Texas since 1990 (the Property).  In that time, the Fustoks have refinanced the loan on the Property multiple times.  On May 17, 2005, Malak Fustok executed a Durable Power of Attorney (the Power of Attorney) at her husband's medical office, appointing him as her attorney-in-fact and granting him "full power and authority to do and perform all and every act and thing whatsoever necessary to be done" with respect to refinancing the Property.  The following month, the Fustoks refinanced their home, with Abdel acting as attorney-in-fact for Malak in executing a lien contract and deed of trust with Bank of America.  In 2007, the Fustoks entered into the refinancing arrangement at issue in this appeal, whereby Abdel signed, among other closing documents, a promissory note and a Homestead Lien Contract and Deed of Trust (the Deed of Trust).  He signed these documents both for himself and for Malak as Power of Attorney.  After several years of paying on the loan, the Fustoks fell behind on payments in 2015, and Bank of America sent a notice threatening foreclosure.  However, Bank of America has not sought a court order for foreclosure.

After receiving the notice from Bank of America, the Fustoks brought this action,[1] seeking release from their obligations under the 2007 note and

---

[1] The Fustoks initially filed suit in Texas state court, but Bank of America removed the case to federal court based on diversity jurisdiction.

return of the almost $1.3 million Abdel had already paid on the loan. The Fustoks contend that Malak's Power of Attorney was invalid because it had been executed at Abdel's medical office rather than at one of the locations specifically prescribed in the Texas Constitution, which requires that homestead liens such as the refinancing at issue here must be "closed only at the office of the lender, an attorney at law, or a title company." TEX. CONST. art. XVI, § 50(a)(6)(N).[2] According to the Fustoks, the invalidity of the Power of Attorney meant Malak's consent to the transaction, also required by the Texas Constitution, was never validly obtained.[3] The Fustoks and Bank of America each moved for summary judgment. The district court denied the Fustoks' motion for summary judgment, granted summary judgment for Bank of America, and dismissed the Fustoks' claims with prejudice.[4]

## II

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Howell v. Town of Ball*, 827 F.3d 515, 521 (5th Cir. 2016). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). We apply the substantive law of the state of Texas in this

---

[2] The parties do not dispute that the closing itself occurred at an improper location or that Abdel's signature was invalid.

[3] Malak, in an affidavit in support of the Fustoks' motion for summary judgment, averred: "I do not now give any consent to . . . the . . . 2007 transaction[]," and that "[t]o the extent my consent was required . . . I have not, and do not, give that consent."

[4] The district court also dismissed as moot Bank of America's conditional counterclaim without prejudice.

diversity action. *See Gebreyesus v. F.C. Schaffer & Assocs., Inc.*, 204 F.3d 639, 642 (5th Cir. 2000).

## III

The Fustoks make two basic contentions regarding the constitutional validity of the 2007 refinancing: (1) Malak never validly consented as required by the Texas Constitution, because her Power of Attorney was invalid; and (2) Bank of America failed to provide notice, in a constitutionally compliant form, of the Fustoks' right to the remedy of forfeiture—i.e., return—of all payments made to the bank in the event of the bank's non-compliance with its obligations. We analyze these contentions in turn, concluding that both fail.

## A

"In the State of Texas, the homestead has always been protected from forced sale, not merely by statute as in most states, but by the Constitution." *Fin. Comm'n of Texas v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013). These protections are enshrined in Article XVI, Section 50's "lengthy, elaborate, detailed provisions." *Id.* at 571. Thus, "[n]o mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married." TEX. CONST. art. XVI, § 50(c).

Section 50(a)(6) states one of the Section's exceptions to the prohibition on forced sale for homesteads, for "an extension of credit that . . . is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse." TEX. CONST. art. XVI, § 50(a)(6)(A). Thus, every homestead lien contract of this type must include consent of the spouses of each owner. Further, in order for such a homestead lien to be valid, the extension of credit must be "closed only at the office of the lender, an attorney at law, or a title company." *Id.* § 50(a)(6)(N). As the Texas

No. 17-20682

Supreme Court held in 2013, this provision requires that "[e]xecuting the required consent or a power of attorney . . . must occur only at one of the locations allowed by the constitutional provision." *Norwood*, 418 S.W.3d at 588.

Section 50 of the Texas Constitution also contains a "safe harbor" provision that contemplates the situation where, as here, parties enter into a transaction that is valid under then-existing regulations, but those regulations are later invalidated on judicial review. The "safe harbor" provision was adopted to protect lenders from the harsh consequences of a later judicial finding of noncompliance with Section 50, which included "not merely the loss of the right of forced sale of the homestead, but forfeiture of all principal and interest." *Norwood*, 418 S.W.3d at 572. This provision, Section 50(u), states:

> (u) The legislature may by statute delegate one or more state agencies the power to interpret Subsections (a)(5)-(a)(7), (e)-(p), and (t), of this section. An act or omission does not violate a provision included in those subsections if the act or omission conforms to an interpretation of the provision that is:
>
> (1) in effect at the time of the act or omission; and
>
> (2) made by a state agency to which the power of interpretation is delegated as provided by this subsection or by an appellate court of this state or the United States.

TEX. CONST. art. XVI, § 50(u). As the Texas Supreme Court has noted, the second sentence of this provision "creates a safe harbor for lenders, relieving them of liability for any constitutional violations as long as agency interpretations are followed." *Norwood*, 418 S.W.3d at 573 (footnote omitted). This safe harbor is powerful, because it does "not merely . . . excus[e] a violation; it states that no violation even occurs. A lender's compliance with

5

an agency interpretation of Section 50, even a wrong interpretation, is compliance with Section 50 itself." *Id.*

The transaction here was valid under then-existing interpretive regulations. Acting under its validly delegated authority, *see* Acts 2003, 78th Leg., ch. 1207, § 1, eff. Sept. 13, 2003, the Finance Commission and the Credit Union Commission (the Commission) issued, among others, the following regulation:[5] "A lender may accept a properly executed power of attorney allowing the attorney-in-fact to execute closing documents on behalf of the owner." 7 TEX. ADMIN. CODE § 153.15 (2004). As the Texas Supreme Court recognized in *Norwood*, this provision allowed a power of attorney to be executed at locations other than those specified in Section 50. *See Norwood*, 418 S.W.3d at 588 ("[T]he Commissions' interpretations allow a borrower . . . to close through an attorney-in-fact" and permit "obtaining . . . a power of attorney at the borrower's home, allowing the final closing to occur later at one of the prescribed locations . . . .").

The Fustoks' contrary arguments are unavailing. First, their argument that *Norwood* "did not create new law" ignores the express recognition of the court in that case that "[u]nder Section 50(u), compliance with any interpretation or judicial decision, *even one later overturned*, is compliance with the Constitution itself." *Norwood*, 418 S.W.3d at 585 (emphasis added). Second, the Fustoks' related contention that the earlier-signed Power of Attorney "was not part of the 2007 closing process" is also foreclosed by the Texas Supreme Court's *Norwood* decision, which, in a supplemental opinion, recognized that, "Section 50(a)(6)(N) does not suggest that the timing of the

---

[5] *See* 29 TEX. REG. 84, 84 (Jan. 2, 2004) ("The Finance Commission of Texas and Texas Credit Union Commission (the 'Commissions') adopt new 7 TAC, Chapter 153, . . . applying the administrative interpretation of subsection (a), Section 50, Article XVI, Texas Constitution, (the 'Home Equity Lending Law') allowed by Senate Joint Resolution 42 ('SJR 42').").

power of attorney is important, or that it cannot be used to close a home equity loan if executed before the borrower applied for the loan." *Id.* at 596 (Suppl. Op. on Mot. For Reh'g).

## B

The Fustoks next argue that Bank of America failed to provide the constitutionally required notice of their right to the remedy of forfeiture—a remedy that requires Bank of America to "forfeit all principal and interest" under certain circumstances—in a form to which the bank was contractually bound to comply. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). In support of this argument, the Fustoks parse the language of one Texas Supreme Court case, which states that the remedy of forfeiture "is just one of the terms and conditions a home-equity loan must include to be foreclosure-eligible." *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 479 (Tex. 2016). From this passage, the Fustoks glean a broad-based rule that, in order to be valid, the Deed of Trust itself must reference their right to seek forfeiture for Bank of America's non-compliance. However, as the Texas Supreme Court explained, the reference to the Fustoks' forfeiture right need only be included in the "loan documents" rather than only in the Deed of Trust. *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 546 (Tex. 2016) (explaining that, in its *Garofolo* decision, it "explain[ed] that borrowers may access the forfeiture remedy through a breach-of-contract action based on the inclusion of those terms in their loan documents, as the Constitution requires to make the home-equity lien foreclosure-eligible"); *see also Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 599 (5th Cir. 2017) (noting that the *Garofolo* case "describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default"). Despite the Fustoks' argument, however, the definition of "Loan Agreement" for purposes of the transaction expressly included the document in which the remedy of forfeiture was

discussed. Thus, as the district court correctly concluded, the 2007 refinancing transaction suffered no constitutional defect.

## IV

In addition to their arguments of invalidity under the Texas Constitution, the Fustoks also contend the terms of the Power of Attorney itself precluded its use as part of the 2007 transaction. Not so. The language of the Power of Attorney determines its scope, and Texas law requires that "we construe the document as a whole in order to ascertain the parties' intentions and rights." *In re Estate of Miller*, 446 S.W.3d 445, 455 (Tex. App.–Tyler 2014, reh'g overruled) (citing *First Nat. Bank in Dall. v. Kinabrew*, 589 S.W.2d 137, 145 (Tex. Civ. App. 1979–Tyler, writ ref'd n.r.e.)). Here, the Power of Attorney's scope clearly includes the 2007 refinancing. The "Property Refinance" paragraph in the Power of Attorney states that the authority Malak granted her husband was "[t]o refinance [the Property] on my behalf in the event of my absence." Further, the Power of Attorney specifically referenced many of the instruments used in the 2007 transaction, including "deeds of trust," "promissory notes," and "mortgage, judgment, and other debts necessary to refinance such Property." The district court was therefore correct to conclude that the Power of Attorney's terms allowed for its use in the 2007 refinancing.

**\*\*\***

For these reasons, we AFFIRM the district court's grant of summary judgment in favor of Bank of America, and its dismissal of the Fustoks' action.