COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| GLORIA G. FLORES, | § | No. 08-20-00184-CV |
| Appellant, | § | Appeal from the |
| v. | § | 327th Judicial District Court |
| BANK OF AMERICA, N.A., | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2020DCV0998) |

# OPINION

Appellant Gloria G. Flores (Flores) sued Appellee Bank of America, N.A. (the Bank) for declaratory relief and damages, making several claims and allegations in relation to a disputed home equity loan. The Bank filed a motion to dismiss Flores's live petition under Texas Rule of Civil Procedure 91a (Rule 91a), which the trial court granted. For the reasons set forth below, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Flores and her then-husband Gerardo Flores took out a home equity loan with Ameriquest Mortgage Company in 2000. Ameriquest refinanced the loan in 2002, and Decision One Mortgage Company, LLC refinanced the loan in 2006. From there, the parties' views of the facts diverge.

### A. Flores's pleading

Flores's pleading alleged that "[t]he actual instruments [for the 2006 loan] were placed in the name of Mortgage Electronic Registration Systems, Inc. [MERS]," which the pleading described as "an enterprise designed to conceal the actual owners and holders of real estate financing instruments to enable the perpetration of deceptive trade practices and fraud." The Bank, according to the pleading, is a member or participant in MERS and one of its founders.

Flores's pleading further alleged that the Bank:

(a) "contin[ues] to act as the mortgage servicing agent for U.S. Bank, N.A.," which "has initiated foreclosure proceedings" despite "actual knowledge that [it is] barred from a forced sale of the Homestead," as "[n]one of the Lenders . . . provided [Flores] with the required notice prescribed by Section 50(a)(8)(g) of Article XVI of the Texas Constitution and did not satisfy all the conditions of Section 50";

(b) sent Flores "false statements as to [the] amount which needed to be paid to keep the loan current" and "is still attempting to collect on the note and foreclose the security agreement";

(c) "conspired [with Flores's then-husband] to cause and engage in a wrongful foreclosure of the lien . . . by manipulating the payment of real property taxes and status of homeowner's insurance and forcing the creation of an escrow for taxes and insurance," after which the Bank "started demanding monthly payments more than double the prior payments";

(d) "reported falsely to credit bureaus that [Flores] has personal liability on this debt," thereby damaging her credit standing and defaming her; and

(e) "denied [Flores] a[] [mortgage] adjustment because of [her] gender . . . and because she was not joined in the application by her husband who[m] she was divorcing."

Flores's pleading sought a declaratory judgment that "the lien asserted by [the Bank] is not enforceable against [Flores's] homestead" and that "[Flores] has no personal liability for the debt." The pleading further sought "damages in the amount of the interest being collected on the alleged debt"; "additional damages resulting from the defamations made by [the Bank]"; and "attorney's fees, . . . legal fees, and court costs."

## B. The Bank's Rule 91a Motion to Dismiss

The Bank did not file an answer. Instead, it filed a motion to dismiss under Rule 91a, attaching to its motion the following twelve exhibits:

Exhibit A—2000 security instrument;

Exhibit B—2002 security instrument;

Exhibit C—2006 security instrument;

Exhibit D—2006 promissory note;

Exhibit E—2006 assignment;

Exhibit F—release of lien for 2000 security instrument;

Exhibit G—release of lien for 2002 security instrument;

Exhibit H—recommended dismissal signed by Judge W. Reed Leverton on February 28, 2017;

Exhibit I—order adopting recommended dismissal signed by Judge Laura Strathmann on August 17, 2017;

Exhibit J—docket sheet for Case No. 2018DCV1779, a foreclosure action;

Exhibit K—agreed order of August 28, 2019, setting aside order of August 17, 2017; and

Exhibit L—Texas Home Equity Affidavit and Agreement (Flores's affidavit).

In its motion, the Bank asked the trial court to take judicial notice of these exhibits, except Exhibit D (2006 promissory note), which the Bank asserted "[t]he Court may consider . . . because [the note] is referenced in [Flores's pleading] and is central to [her] claims," and Exhibits H, I, and L (recommended dismissal, order of dismissal, and Flores's affidavit), which the Bank attached without stating why it thought the trial court could consider them.

Further, the Bank argued that Flores's constitutional claim was "nonsensical" because it referred to Section 50(a)(8)(g) of Article XVI of the Texas Constitution, which does not exist;

3

"insufficient" because Flores "d[id] not allege which particular provision of 'Section 50' was allegedly violated or how"; and negated by Flores's affidavit, which allegedly affirmed "that the 2006 Loan fully complied with the Texas Constitution."

In addition, the Bank argued that Flores's request for declaratory relief should be denied because she "executed both the 2006 Note and the 2006 Security Instrument, and therefore, her allegation that she has no personal liability on the 2006 Loan is unsupported," and because "the real property records accurately reflect that U.S. Bank is the mortgagee of record with regard to the 2006 Security Instrument, and [Flores] has not alleged a single fact that would warrant declaring the 2006 Security Instrument unenforceable."

## C. Flores's objection and response

Flores filed an objection and response to the Bank's motion to dismiss, arguing that the Bank failed to "follow the constraints of Rule 91a.6," under which "the court may not consider evidence," further noting that "this is not a summary judgment proceeding," and asserting that the allegations in her pleading were sufficient to support her claims.

## D. The Bank's reply

The Bank filed a reply, arguing that it "[did] not present[] any 'evidence' in support of its [motion], but rather the exhibits to [its motion] are matters of public record that the Court can take judicial notice of."

Further, in regard to Flores's conspiracy claim, the Bank argued that Flores failed to allege "the years and amounts that insurance was wrongfully impounded on the loan"; "[the Bank] and Gerardo Flores reached a 'meeting of the minds'"; "[the Bank] acted with 'specific intent' to commit an unlawful act"; "[Flores] suffered any damages"; "[Flores] ever informed [the Bank] that she had an insurance policy in place"; or "any facts surrounding the alleged policy, i.e. when

4

[Flores] obtained the alleged policy, what the dates of coverage [were], who the insurance carrier was, and/or how she notified [the Bank] of any purported policy." The Bank asserted that "[Flores's] conclusory allegations are wholly insufficient."

In addition, in regard to Flores's constitutional argument, the Bank argued that "section 50(a) *does not create substantive rights beyond a defense to a foreclosure action* on a home-equity lien securing a constitutionally noncompliant loan and that *forfeiture is not a constitutional remedy*," citing *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 546 (Tex. 2016), and "[t]he constitution guarantees freedom from forced sale of a homestead to satisfy the debt on a home-equity loan that does not include the required terms and provisions—*nothing more*," citing *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 484 (Tex. 2016). Thus, the Bank asserted, "[Flores's] allegations are fundamentally deficient."

Finally, the Bank argued that "[Flores's] unsupported allegation that [the Bank] falsely reported that [Flores] is personally liable on the Loan cannot overcome the Motion to Dismiss or [provide] any basis for th[e trial c]ourt to declare the 2006 Security Instrument unenforceable."

After hearing argument, the trial court granted the Bank's Rule 91a motion to dismiss with prejudice. This appeal followed. In one global issue, Flores contends the trial court erred in dismissing all of her claims against Bank of America because none of the causes of action pleaded were frivolous or failed to state a cause of action.

## STANDARD OF REVIEW AND APPLICABLE LAW

Rule 91a allows a party to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. A cause of action has no basis in law "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id*. A cause of action has no basis in fact "if no reasonable person could believe

the facts pleaded." *Id*.

The merits of a Rule 91a motion are reviewed de novo. *In re Farmers Texas Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding); *Aguilar v. Morales*, 545 S.W.3d 670, 676–77 (Tex. App.—El Paso 2017, pet. denied) ("[B]oth determinations of whether a cause of action has any basis in law and in fact are legal questions.").

In conducting this review, we apply the Texas fair-notice pleading standard, under which a pleading is sufficient "if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982); *Aguilar*, 545 S.W.3d at 677. In other words, we must "assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *see also In re Jordan Foster Constr., LLC*, No. 08-22-00201-CV, 2023 WL 2366610, at *3 (Tex. App.—El Paso Mar. 6, 2023, no pet.) (orig. proceeding) (mem. op.) ("If a petition provides sufficient facts to give fair notice of the claim, then a motion seeking dismissal based on lack of a basis in fact should be denied." (quoting *Darnell v. Rogers*, 588 S.W.3d 295, 301 (Tex. App.—El Paso 2019, no pet.))). Further, "if nothing in the pleading itself triggers a clear legal bar to the claim, then there is a basis in law and the motion should be denied." *In re Jordan Foster Constr., LLC*, 2023 WL 23666, at *3 (quoting *Darnell*, 588 S.W.3d at 301).

When ruling on a Rule 91a motion, a court "may not consider evidence but 'must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits.'" *In re Farmers*, 621 S.W.3d at 266 (quoting Tex. R. Civ. P. 91a.6).

In addition, we construe the pleadings liberally in the plaintiff's favor, look to the pleader's intent, and accept as true the pleading's factual allegations. *In re Facebook, Inc.*, 625 S.W.3d 80,

83 (Tex. 2021), *cert. denied sub nom. Doe v. Facebook, Inc.*, 142 S.Ct. 1087 (2022) (orig. proceeding); *In re Jordan Foster Constr., LLC*, 2023 WL 2366610, at *3. Because Rule 91a provides a harsh remedy, its requirements must be strictly construed. *Darnell*, 588 S.W.3d at 304.

**DISCUSSION**

### A. Preliminary matters

Prior to turning to Flores's purported claims, we address two preliminary matters. First, Flores asserts that our review may be impacted by the Bank's alleged misnomer regarding her live petition. Second, the parties disagree over what documents may be considered within the context of the Rule 91a motion to dismiss.

### (1) Misnomer

First, Flores asserts that the Bank's motion to dismiss refers to Flores's "Fourth Amended Third-Party Petition" filed on March 17, 2020, when in fact the pleading Flores filed on that date was entitled "Petitioner's Original Petition in Severed Action for Declaratory Judgment, for Rescission, and for Damages." Flores argues that "[p]erhaps this is a simple clerical mistake[;] however, it may be an issue because, in addition to referring [to] [Flores's] pleading that way on page 1 and page 4 of the Motion to Dismiss, [the Bank] carried it over into its proposed order which is the order actually signed by the [trial c]ourt[,] [which] dismissed [Flores's] 'Fourth Amended Third-Party Petition.'"

However, the parties agree that Flores's live pleading is the pleading filed on March 17, 2020, and neither asserts that appellate review of the case will be affected by the alleged misnomer, and in fact Flores asserts that "[t]he [trial c]ourt did dismiss all claims of [Flores] against [the Bank]." We conclude that the alleged misnomer does not prevent or affect our review of the trial court's dismissal of Flores's live pleading under Rule 91a.

7

**(2)   Scope of documents reviewable under Rule 91a**

As a second preliminary matter, we must determine whether the exhibits attached to the Bank's motion can be considered under Rule 91a, which as noted above, provides that "the [trial] court may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." TEX. R. CIV. P. 91a.6.

In the trial court, the Bank argued that the court should take judicial notice of certain exhibits because they are official public records. On appeal, the Bank maintains this argument and newly argues that certain exhibits were properly before the trial court under Texas Rule of Civil Procedure 59 (Rule 59) because they were referred to in Flores's pleading or were the subject of or central to her claims. We consider each argument in turn.

**(a)   Judicial notice**

In support of its argument that taking judicial notice of official public records is proper under Rule 91a, the Bank cites *Lovelady v. State*, 65 S.W.3d 810, 814 (Tex. App.—Beaumont 2002, no pet.) and *County of El Paso v. Navar*, 584 S.W.3d 73, 77–78 (Tex. App.—El Paso 2018, no pet.). While these cases address judicial notice issues, neither does so in the context of or with relevance to Rule 91a. Instead, both address judicial notice in cases contemplating evidence in their analyses—*Lovelady* was a criminal case, and *Navar* involved a summary judgment motion and subject-matter jurisdiction challenge raised on appeal. Further, while the Bank cites Texas Rule of Evidence 201(d) for the proposition that judicial notice may be taken at "any stage" of a case, Rule 201 does not address whether taking judicial notice involves considering evidence, which is prohibited under Rule 91a.

Several of our sister courts have addressed this question, all holding that judicial notice

cannot be taken under Rule 91a because it would involve improper consideration of evidence. *Harlow v. Harlow, Tr. of Haley Harlow, Jr. Tr.*, No. 05-22-00585-CV, 2023 WL 3220919, at *4 (Tex. App.—Dallas May 3, 2023, no pet.) ("To consider whether the same facts were previously litigated . . . would require us to improperly take judicial notice of the proceedings. Rule 91a.6 expressly prohibits the consideration of evidence and requires that the motion be decided based solely on the plaintiff's pleading."); *Reynolds v. Quantlab Trading Partners US, LP*, 608 S.W.3d 549, 557 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("A party may not rely on judicial notice in a Rule 91a proceeding because judicial notice is 'a matter of evidence.'" (citing *Harper v. Killion*, 162 Tex. 481, 484, 348 S.W.2d 521, 523 (1961))); *Farr v. Barnes*, No. 04-19-00895-CV, 2020 WL 6048770, at *1–2 (Tex. App.—San Antonio Oct. 14, 2020, no pet.) (stating "[i]n keeping with the required standard for reviewing a Rule 91a dismissal, we decline to consider any evidence or assertions of fact not found within [the plaintiff's] pleading or pleading exhibits" in response to defendants asking the court to take judicial notice of the court file in a different proceeding and to consider a brief and a hearing transcript from yet another proceeding); *San Jacinto River Auth. v. Burney*, 570 S.W.3d 820, 831 (Tex. App.—Houston [1st Dist.] 2018), *aff'd sub nom. San Jacinto River Auth. v. Medina*, 627 S.W.3d 618 (Tex. 2021) ("Because Rule 91a expressly prohibits a court's consideration of evidence, and it expressly requires that the motion to dismiss be decided based solely on the pleadings, we decline to take judicial notice of [the defendant's] proffered evidence.").[1]

---

[1] We note three distinguishable cases in which judicial notice was taken in a Rule 91a proceeding as a result of waiver by a non-prevailing plaintiff—*Payne v. Payne*, No. 06-20-00051-CV, 2021 WL 1216885 (Tex. App.—Texarkana Apr. 1, 2021, no pet.), where the plaintiff did not object to the defendant's attachment of their divorce decree to her Rule 91a motion and instead himself asked the trial court to take judicial notice of the decree, 2021 WL 1216885, at *3 n.7, *4; *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349 (Tex. App.—El Paso 2022, no pet.), where the plaintiff conceded that a transferee as well as transferor appellate court could take judicial notice of related proceedings, 657 S.W.3d at 357 n.2; and *Conroy v. Harris*, No. 07-18-00381-CV, 2019 WL 1908130, at *1 (Tex. App.—Amarillo Apr. 29, 2019, pet. denied), where the defendant "invoked a federal rule . . . to justify its

In contrast, we are aware of no cases holding that the taking of judicial notice can be reconciled with Rule 91a's prohibition against considering evidence. We adopt the reasoning of our sister courts in concluding that taking judicial notice is improper under Rule 91a.

### (b) Rule 59

In support of its argument that certain of its exhibits may be considered under Rule 59 because they were referenced in Flores's pleading or are the subject of or central to her claims, the Bank cites no authority beyond Rule 59 itself. Rule 59 provides that certain documents "may be made a part of the pleadings by copies thereof, or the originals, being attached or filed and referred to as such":

> Notes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings by copies thereof, or the originals, being attached or filed and referred to as such, or by copying the same in the body of the pleading in aid and explanation of the allegations in the petition or answer made in reference to said instruments and shall be deemed a part thereof for all purposes. Such pleadings shall not be deemed defective because of the lack of any allegations which can be supplied from said exhibit. No other instrument of writing shall be made an exhibit in the pleading.

TEX. R. CIV. P. 59. Under Rule 59, it would appear clear that had Flores herself attached or filed the documents at issue falling within Rule 59's scope, those documents would have become part of her pleading. However, it is unclear from the text of Rule 59 whether a defendant may, in effect, supplement a plaintiff's pleading by filing such documents.

In *Life v. Gino Morena Enterprises, LLC*, No. 08-23-00055-CV, 2023 WL 4557747 (Tex. App.—El Paso July 17, 2023, no pet.), the defendant sought relief under Rule 91a based on

decision to proffer [federal documents, which it asked the trial court to take judicial notice of] as part of [its] Rule 91a motion," and the appellate court concluded that "[t]he legitimacy of that tactic is not something we need consider since [the plaintiff] did not complain about it on appeal," 2019 WL 1908130, at *1 n.1. Here, the Bank does not argue that Flores waived this issue. Further, Flores contends it was improper for the Bank to attach exhibits to its motion in the first place, an issue Flores both raised in the trial court and continues to press on appeal.

exhibits attached to its answer. 2023 WL 4557747, at *5. We declined to consider those exhibits, reasoning that a trial court "may not consider evidence in ruling on [a Rule 91a] motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." *Id*. (quoting TEX. R. CIV. P. 91a.6). We specifically held that "a Rule 91a dismissal must be based on the plaintiff's petition[,] not the defendant's answer or exhibits." *Id*. (citing *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020)).

In *Southwest Airlines Pilots Ass'n v. Boeing Co.*, No. 05-21-00598-CV, 2022 WL 16735379 (Tex. App.—Dallas Nov. 7, 2022, pet. filed), the defendant attached to its answer copies of the plaintiff's petition in an earlier lawsuit and the trial court's order granting the defendant's plea to the jurisdiction. 2022 WL 16735379, at *2. The Dallas Court of Appeals observed that "exhibits attached to another party's pleading may tend to show the plaintiff's pleading is baseless, but Rule 91a does not permit their consideration," and "[Rule 91a] requires the determination of baselessness be made from the allegations in the cause of action and the facts pleaded in the cause of action, not from documents extraneous to the petition and presented by other parties." *Id*. at *5. Further observing that "[g]ranting a motion to dismiss based on the exhibits to another party's pleading would require the court to treat those exhibits as evidence and to accept those documents as true, both of which are contrary to the standard of review [for Rule 91a]," the court declined to consider the exhibits at issue. *Id.* at *6, *8. In reaching this result, the court relied on the Texas Supreme Court's decision in *Bethel*, which held that defendants' pleadings may inform a legal basis to dismiss but not a factual basis to dismiss when an affirmative defense is raised as a ground for dismissal under Rule 91. *Sw. Airlines*, 2022 WL 16735379, at *4; *see Bethel*, 595 S.W.3d at 656 ("Rule 91a limits a court's factual inquiry to the plaintiff's pleadings but does not so limit the

11

court's legal inquiry. In deciding a Rule 91a motion, a court may consider the defendant's pleadings if doing so is necessary to [determine] whether an affirmative defense is properly before the court."). The Dallas Court of Appeals explained:

> Applying *Bethel*, we look to the motion to dismiss to find the grounds for dismissing the action under Rule 91a. If one of those grounds is an affirmative defense, we look to the answer to determine whether the affirmative defense has been pleaded and was properly before the court. If it was pleaded, then we look to the petition and any exhibits properly attached to the petition to determine whether the allegations in the petition establish the defense and demonstrate that the action has no basis in law.

*Sw. Airlines*, 2022 WL 16735379, at \*4 (internal citations omitted).

In *Raider Ranch, LP v. Lugano, Ltd.*, 579 S.W.3d 131 (Tex. App.—Amarillo 2019, no pet.), the defendant argued that, for purposes of Rule 91a, "optional completeness" required consideration of an amended version of a limited partnership agreement. 579 S.W.3d at 133. The plaintiff had attached the original agreement to its pleading. *Id.* The defendant attached the amended version to its own pleading and Rule 91a motion, then argued that the "completed" plaintiff's pleading defeated the plaintiff's claims. *Id.* The Amarillo Court of Appeals rejected the defendant's "optional completeness" theory, holding that the trial court was required to consider only the plaintiff's pleading in ruling on a Rule 91a motion. *Id.* at 134; *see also Renate Nixdorf GmbH & Co. KG v. TRA Midland Properties, LLC*, No. 05-17-00577-CV, 2019 WL 92038, at \*4 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) ("In deciding a rule 91a motion, the trial court may consider only the live pleading [of the cause of action] and any attachments thereto"); *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("We conclude that both determinations of whether a cause of action has any basis in law and in fact [under Rule 91a] are legal questions that we review de novo, based on the allegations of the live petition and

any attachments thereto").[2]

In contrast, we have found no cases holding that for purposes of Rule 91a, a defendant may, in effect, supplement or "complete" a plaintiff's pleading by filing documents under Rule 59. And we conclude that the Bank cannot do so here.

## B. Claims and allegations raised in Flores's petition

We next consider whether Flores's purported claims are dismissible under Rule 91a without considering the exhibits attached to the Bank's motion.

### (1) Flores's constitutional claim

Flores's pleading alleged that the Bank is "the mortgage servicing agent for U.S. Bank, N.A.," which "has initiated foreclosure proceedings" despite "actual knowledge that [it is] barred from a forced sale of the Homestead," as "[n]one of the Lenders . . . provided [Flores] with the required notice prescribed by Section 50(a)(8)(g) of Article XVI of the Texas Constitution and did not satisfy all the conditions of Section 50."

First, the Bank argues that dismissal of this claim was proper under Rule 91a because

---

[2] *Lewis v. Pittman*, 191 S.W.2d 691 (Tex. App.—Eastland 1945, no writ), which involved review of a special exception, seems to confirm both that a defendant normally cannot supplement a plaintiff's petition by filing documents under Rule 59 and that this constraint, like the constraint on judicial notice discussed in the previous footnote, is waivable:

> Ordinarily, the consideration of an exception is limited to a study of the petition. But where an instrument of document is attached to the petition as an exhibit and made a part thereof, it may be considered by the court in connection with the pleadings in testing the sufficiency of an exception. In this case said lease was presented to the court by defendant's attorney. However, no objection to this procedure, nor to recitals in the judgment as to such consideration, seems to have been made by plaintiff, and the point was not saved for appeal. As further indicating that plaintiff acquiesced in the procedure, attorneys for both plaintiffs and defendant, by their written agreement, directed that said lease contract be brought forward in the transcript. We conclude that plaintiff assented that said lease contract be considered by the trial court in testing the said exception, as if same had been attached as an exhibit to the petition. See Rules 59 and 90, Texas Rules of Civil Procedure.

191 S.W.2d at 693. Here again, the Bank does not argue that Flores waived this issue. And as noted above, Flores contends it was improper for the Bank to attach exhibits to its motion, an issue Flores both raised in the trial court and continues to press on appeal.

Section 50(a)(8)(g) does not exist, thereby rendering Flores's allegation "nonsensical." The Bank further notes that Flores failed to correct this pleading defect even after the Bank pointed it out. However, the Bank cites no authority holding that dismissal under Rule 91a is proper if the plaintiff's pleading contains an incorrect legal citation. Flores, in turn, apologizes for her "typ[o]graphical error," explaining that it resulted from "inserting an (a)(8) before the (g) in Section 50(g)," but she likewise cites no authority regarding the consequences of such an error.

In *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000), the defendant sought to assert a statutory defense in its pleading but cited the wrong statute. The Supreme Court analyzed the issue as follows:

> Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. [The defendant's] first amended answer pleaded sufficient facts to give adequate and fair notice to [the plaintiff] and the trial court of [its] intent to invoke the punitive-damages cap found in the Texas Civil Practice and Remedies Code, even though the pleading referred to an incorrect version of the statute. A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense. [The defendant] satisfied this standard. Being that there was, and is, only one punitive-damages cap provision in Chapter 41, it is hard to imagine that [the plaintiff] was unaware of exactly what [the defendant] was claiming.

*Auld*, 34 S.W.3d at 896–97 (citations and quotation marks omitted*); see also Troutman v. Traeco Bldg. Sys., Inc.*, 724 S.W.2d 385, 387 (Tex. 1987) (holding plaintiff need not plead specific Deceptive Trade Practices Act section allegedly violated); *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex. 1985) (same); *The Huff Energy Fund, L.P. v. Longview Energy Co.*, 482 S.W.3d 184, 195 (Tex. App.—San Antonio 2015*), aff'd sub nom. Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866 (Tex. 2017) ("In determining whether a pleading is adequate, we examine whether an opposing attorney of reasonable competence, on review of the pleadings, can ascertain the

nature and the basic issues of the controversy"); *id*. at 219 (Chapa, J., dissenting) ("Texas has long rejected pleading rules, such as a requirement that legal theories of recovery be clearly and accurately identified, that prioritize form over substance.").

Here, the Bank argues neither that Flores's misciting of Section 50(g) as Section 50(a)(8)(g) prevented the Bank from ascertaining the nature and basic issues of the controversy involved and what testimony would be relevant nor that this error prevented it from preparing a defense. And given the relatively small number of "required notice[s] prescribed by" Section 50(g), it is hard to imagine the Bank was unaware of what Flores was claiming when she pled that "[n]one of the Lenders . . . provided [Flores] with the required notice prescribed." We conclude that Flores's pleading, even with the error, provided fair notice of her constitutional claim.

The Bank further contends that at the trial court hearing, Flores could have sought leave to correct her pleading but failed to do so; thus, for Flores to now characterize her reference to "Section 50(a)(8)(g)" as a typographical error is insufficient to demonstrate reversible error. But because we conclude that Flores's pleading, even with the error, provided fair notice of her constitutional claim, we also conclude that her failure to correct the error did not provide a proper basis for dismissal under Rule 91a.

The Bank additionally contends that Flores cannot now recharacterize her reference to "Section 50(a)(8)(g)" as an error because arguments on appeal must comport with the arguments made below, citing *Watts v. Watts*, 396 S.W.3d 19, 23 (Tex. App.—San Antonio 2012, no pet.) and *Tate v. Andrews*, 372 S.W.3d 751, 754 (Tex. App.—Dallas 2012, no pet.). However, given our fair-notice analysis, these cases are inapposite.

Second, the Bank argues that dismissal of Flores's constitutional claim was proper under Rule 91a because Flores did not allege which particular provision of "Section 50" was violated or

how. The Bank notes that Section 50 includes twenty-two parts, each of which includes subparts, totaling over 150 provisions. However, because Flores alleged that Section 50 was violated at least in part because "[n]one of the Lenders . . . provided [Flores] with the required notice prescribed," we conclude it would have been improper to dismiss her constitutional claim for failure to allege which particular provision of Section 50 was allegedly violated or how.

Third, the Bank argues that dismissal of Flores's constitutional claim was proper under Rule 91a because Flores signed a Texas Home Equity Affidavit and Agreement affirming "that the 2006 Loan fully complied with the Texas Constitution," thereby contradicting her allegation that the loan did not satisfy "all the conditions of Section 50." As noted above, however, we cannot consider such documents because they are evidence. But even if we could, the affidavit would not make dismissal under Rule 91a proper. While the affidavit does refer to various provisions of Section 50, it nowhere affirms that the 2006 Loan "fully complied with the Texas Constitution." Further, if what the Bank intended to argue is that the affidavit includes a series of representations and warranties by the borrowers that the lender complied with each and every requirement imposed by the Texas Constitution, the Bank makes no more than a conclusory contention in this regard, which is insufficient. *See Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) (explaining that appellate briefs must contain a clear and concise argument, a requirement that is not satisfied by "merely uttering brief conclusory statements").

Fourth, the Bank argues that dismissal of Flores's constitutional claim was proper under Rule 91a because Flores's Section 50(a)(1) argument—i.e., that her homestead is not subject to any lien subsequent to a purchase money loan lien, and the loan at issue is not a purchase money loan—fails to account for Section 50(a)(6), which permits a homestead to be subject to a home equity loan lien, which is the type of lien involved here. Even assuming the Bank's argument is

16

correct, however, dismissal under Rule 91a would not be proper since Flores's constitutional claim is based at least in part on the allegation that "[n]one of the Lenders . . . provided [Flores] with the required notice prescribed."

Fifth, the Bank argues that dismissal of Flores's constitutional claim was proper under Rule 91a because the trial court was allowed to consider all of its exhibits, an argument we reject for the reasons stated above.

As a result, we conclude that Flores's constitutional claim was improperly dismissed under Rule 91a.

### (2) Flores's defamation claim

Flores's pleading alleged that the Bank "reported falsely to credit bureaus that [Flores] has personal liability on this debt," thereby damaging her credit standing and defaming her.

The Bank argues that its reporting of the 2006 Loan as delinquent was proper, did not constitute defamation, and did not warrant a declaratory judgment that Flores is not "personally liable" on the debt, citing *Melton v. CU Members Mortgage*, 586 S.W.3d 26, 33–34 (Tex. App.—Austin 2019, pet. denied) for the proposition that reporting delinquent payments to a credit agency is not equivalent to averring that a person is exposed to personal liability.

However, Flores's pleading alleged, not that the Bank merely reported her as delinquent, but rather that the Bank reported "that [she] has personal liability on this debt." Because there appears to be a fact dispute regarding the substance of what the Bank reported to credit bureaus, Rule 91a was not a proper vehicle to resolve this issue.

The Bank further argues that Flores's pleading was insufficient because Flores did not allege that the 2006 Loan was current; thus, any information provided by the Bank to credit bureaus regarding the default status of this loan did not constitute publication of a false or defamatory

17

statement and could not support a plausible defamation claim. However, again, Flores's pleading alleged that the Bank reported to credit bureaus, not merely that the loan was in default, but that Flores was personally liable. The Bank does not argue that this allegation, if true, could not give rise to a defamation claim.

Finally, the Bank argues that Flores did not allege that she disputed the credit reporting on the 2006 Loan in accordance with the Fair Credit Reporting Act. However, the Bank does not explain the consequences, if any, that might result if Flores in fact failed to do so.

As a result, we conclude that Flores's defamation claim was improperly dismissed under Rule 91a.

### (3) Other allegations/purported claims

#### (a) False statements and conspiracy

Flores's pleading alleged that the Bank sent her "false statements as to [the] amount which needed to be paid to keep the loan current" and "is still attempting to collect on the note and foreclose the security agreement." The Bank neither addressed the false-statements allegation/purported claim in the trial court nor addresses it on appeal, thereby waiving any argument that its dismissal was proper under Rule 91a. *See In re A.N.G.*, 631 S.W.3d 471, 476–77 (Tex. App.—El Paso 2021, no pet.) (explaining that issues "may be waived when [a party] fails to provide citations, argument, or analysis").

Flores's pleading further alleged that the Bank "conspired [with Flores's then-husband] to cause and engage in a wrongful foreclosure of the lien . . . by manipulating the payment of real property taxes and status of homeowner's insurance and forcing the creation of an escrow for taxes and insurance," after which the Bank "started demanding monthly payments more than double the prior payments." While the Bank did address this conspiracy allegation/purported claim in the trial

18

court, it does not address it on appeal, thereby waiving any argument that its dismissal was proper under Rule 91a. *See id.* (finding appellant waived his argument on appeal by failing to make a clear and concise argument and provide proper citations and authorities to the appellate court).

### (b) Gender discrimination

Flores's pleading alleged that the Bank "denied [her] a[] [mortgage] adjustment because of [her] gender . . . and because she was not joined in the application by her husband who[m] she was divorcing."

First, the Bank argues that the words "discrimination," "discriminate," "discriminatory lending," and "gender discrimination" do not appear in Flores's pleading; thus, it is "disingenuous" for her to argue on appeal that she pled a claim for "discriminatory lending." However, the Bank neither cites authority that any magic words are required nor explains why it believes Flores's argument is disingenuous.

Second, the Bank argues that its alleged denial of a mortgage adjustment simply acknowledged that Flores and her then-husband were coborrowers and demonstrated only that the Bank told Flores that if her husband deeded his interest in the property to her, she could apply for a loan adjustment or a new loan by herself. In other words, according to the Bank, because the property was possessed by Flores and her spouse during their marriage and was presumed to be community property pursuant to Texas Family Code § 3.003(a), it was appropriate for the Bank to instruct Flores that either her coborrower and spouse could deed his interest to her, or both would have to join in any application to modify the loan contract they had jointly signed—this was a simple consequence of Texas contract law, property law, and the Texas Family Code, not gender discrimination or "discriminatory lending." However, Flores's pleading alleged that she was denied an adjustment for two reasons: because of her gender *and* because she was not joined in

19

the application by her husband. Thus, because the Bank's argument addresses only the second reason, dismissal under Rule 91a was not proper.

Third, in regard to Flores's claim that the property at issue was her separate property, having been a gift from her mother, the Bank argues that judicial notice may be taken of the fact that the public record contradicts this claim, as the special warranty deed named Flores and her then-husband as grantees. But as explained above, we cannot take judicial notice of such documents under Rule 91a.

Finally, as Flores points out, the Bank's motion to dismiss did not address Flores's gender-discrimination allegation. As a result, we conclude that dismissal under Rule 91a was improper.

### (4) Flores's request for declaratory judgment

The Uniform Declaratory Judgment Act (UDJA) is a *sui generis* procedural vehicle designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations"; it is remedial in nature and cannot independently establish jurisdiction or enlarge jurisdiction. *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b)); *see also Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021), reh'g denied (Sept. 3, 2021) (recognizing that the UDJA action is neither legal nor equitable, but *sui generis*); TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). Given the unique nature of the UDJA, a declaratory judgment is appropriate only if (1) a justiciable controversy exists as to the rights and status of the parties, and (2) the controversy will be resolved by the declaration sought. *See Allstate*, 627 S.W.3d at 269 ("A declaratory judgment is . . . appropriate when a real controversy exists between the parties, and the entire controversy may be determined by judicial declaration.").

Flores's pleading sought a declaratory judgment that "the lien asserted by [the Bank] is not

20

enforceable against [Flores's] homestead" and that "[Flores] has no personal liability for the debt."

First, the Bank argues that it is undisputed that Flores executed both the 2006 Note and the 2006 Security Instrument. However, as stated above, we cannot consider the Bank's exhibits. But even if we could, the Bank does not explain why Flores's signature on these documents would preclude declaratory relief.

Second, the Bank argues that the real property records accurately reflect that a different bank is the mortgagee of record. However, again, we cannot consider the Bank's exhibits. But even if we could, the Bank does not explain why a different bank's status as mortgagee would preclude declaratory relief, particularly given her allegations that the actual instruments for the 2006 loan were placed in the name of MERS, an enterprise designed to conceal the actual owners and holders of real estate financing instruments to enable the perpetration of deceptive trade practices and fraud; that the Bank is a member or participant in MERS; that the Bank continues to act as the mortgage servicing agent for U.S. Bank, N.A.; and that the Bank is still attempting to collect on the note and foreclose the security agreement.

Third, the Bank argues that Flores "did not allege a single fact that would warrant a declaratory judgment against it that the 2006 Security Instrument was unenforceable." However, as noted above, Flores's pleading did allege that none of the lenders provided a constitutionally required notice. The Bank does not explain why this allegation, if accepted as true as required under Rule 91a, would not warrant the declaratory relief requested.

Fourth, the Bank argues that the constitution does not create substantive rights beyond a defense to foreclosure on a home-equity lien securing a constitutionally noncompliant loan and that forfeiture is not a constitutional remedy, citing *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542 (Tex. 2016) and *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474 (Tex. 2016).

21

Thus, according to the Bank, Flores is not entitled to a declaratory judgment that the 2006 Security Instrument was unenforceable "as a matter of law." However, Flores's pleading sought a declaration that the lien at issue is unenforceable "against her homestead," not unenforceable generally "as a matter of law."

Fifth, the Bank argues that Flores "did not allege a single fact that would warrant a declaratory judgment against [the Bank] that [Flores] was not personally liable for the debt evidenced by the 2006 Loan because [the Bank] did not foreclose and [the Bank] was not seeking to collect a deficiency judgment against [Flores] following foreclosure." However, Flores's pleading did allege that the Bank "reported falsely to credit bureaus that [Flores] has personal liability on this debt," and the Bank does not explain why the declaratory relief requested would not be appropriate in relation to this allegation, assuming the allegation is true, which we do for purposes of Rule 91a.

Finally, the Bank argues that Flores appears to believe that the phrase "without personal liability" in the loan documents means she does not have to repay the debt. The Bank further contends that the nonrecourse status of the 2006 Loan did not mean that Flores was not contractually obligated to repay the loan; rather, as the 2006 Note states, "each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed," and the nonrecourse status of the 2006 Note simply prevents the mortgagee from seeking a deficiency judgment against Flores personally for any outstanding loan balance that exceeds the proceeds from the foreclosure sale of the property. However, even assuming the correctness of the Bank's argument, we see nothing in Flores's pleading or brief on appeal that contradicts it. And even if Flores has an errant belief regarding how home equity loans work, we do not believe the Bank has identified anything in

22

Flores's pleading that would warrant dismissal under Rule 91a.

As a result, we conclude that Flores's request for declaratory relief was improperly dismissed under Rule 91a.

## CONCLUSION

We sustain Flores's single issue on appeal, as her claims were improperly disposed of by the trial court through the grant of a Rule 91a motion to dismiss. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

LISA J. SOTO, Justice

October 25, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.